UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PETER A. SPALLUTO | ) | |
| and ACCESS WITH SUCCESS, INC., | ) | |
| Plaintiffs | ) | CIVIL ACTION NO.: 05-cv-10385EFH |
| | ) | |
| v. | ) | |
| | ) | |
| HDP, INC., | ) | |
| Defendant | ) | |
| | ) | |

## AMENDED COMPLAINT AND JURY DEMAND

### INTRODUCTION

This is an action seeking injunctive, declaratory and equitable relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and injunctive relief and damages under Article114 of the Massachusetts Constitution, Massachusetts General Laws, c. 272, s. 98 and Massachusetts General Laws, Chapter 93 § 103.  The plaintiff, Peter A. Spalluto and Access with Success, Inc. ("AWS"), through their counsel, bring this cause of action against HDP, Inc. and as causes of action allege as follows:

### PARTIES

1. The plaintiff, Access with Success, Inc., ("AWS") is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts.  Its members are able-bodied individuals and qualified individuals with disabilities as defined by the ADA. Its members include Felix Esposito. Mr. G. David Iverson  is also a member.  Mr. Iverson who is a T8-9 complete paraplegic secondary to a gunshot wound.  He relies completely upon a wheelchair for ambulation.   Mr. Peter A. Spalluto, age 58, who is quadriplegic due to a swimming pool diving accident in 1966, is also a member.  He always uses a wheelchair to

ambulate. Mr. Scott M. Frotton, age 41, is a founding member of AWS. Mr. Frotton has T7 paraplegia secondary to a spinal cord injury sustained in a construction site accident in 1998. He has a complete loss of sensory and motor function from his chest down. His condition is permanent. He always uses a wheelchair to ambulate. Mr. Francis DeVito is a Korean War veteran and a member of AWS. In 1953, he was injured by a grenade and gunfire in an ambush attack while his Marine unit was on patrol in Korea. His wounds were such that it became medically necessary to amputate his left leg above the kneecap. He requires the use of ambulatory devices for mobility, including a prosthetic leg and a crutch, when necessary, in order to ambulate. Raymond J. Aziz, age 62, is a member of AWS. He has a mobility impairment secondary to adult onset of diabetes. He requires the use of leg braces from ambulation. Norman P. Crescimano, age 42, is a member of AWS. He has multiple sclerosis and always uses a wheelchair for ambulation. Mr. Frank Salafia, age 66, is a member of AWS. He is hearing impaired and has a loss of vision in one eye. Amylee O'Beirne, age 24, is a founding member of AWS. She has had rheumatoid arthritis since early childhood. She frequently uses a wheelchair for ambulation. Dino N. Theodore, age 44 is a member of AWS. He suffered an accidental gunshot wound to the T7 vertebrae in 1981. He is paraplegic. He always uses a wheelchair. John Pattavina, age 55, is a member of AWS. He is globally aphasic due to a left sided massive stroke which occurred in 2002. He is right sided paralyzed and sometimes requires the use of a wheelchair for ambulation. Peter DiPalma, age 55, is a member of AWS. Mr. DiPalma is quadriplegic. Robert Brearley, age 50, is a member of AWS. He suffered a traumatic spinal cord injury in 1980. He always uses a wheelchair. Robert L. Smith, III is a member of AWS. He always uses an electric wheelchair due to the combined problems of muscular dystrophy and a traumatic pelvic fracture in 2000. All of the above-named members

of AWS are qualified individuals with disabilities within the meaning of the ADA and all other applicable federal and state statutes.

2.     AWS is a civil rights group organized by individuals with disabilities to advocate for disabled persons' integration into society and equal access to all services, activities, programs, resources and facilities available to non-disabled persons.  Its members are predominately, but not exclusively, individuals with various physical disabilities impairing mobility, vision and hearing.  One of the primary purposes of AWS is to assure that places of public accommodation are accessible to, and usable by persons with disabilities.  Title III of the ADA permits private individuals to bring lawsuits in which they can obtain court orders to stop discrimination on the basis of disability.

3.     AWS and its members have suffered direct and indirect injury as a result of the defendants' actions or inactions as described herein.  AWS also has been discriminated against because of its association with its members and their claims.  The defendants' failure to comply with the ADA adversely affects the organizational purpose of AWS.  The protections of the ADA extend to persons who are discriminated against because of their relationship or association with persons who have a known disability. 28 C.F.R. 35.130(g).  This may include family, friends, and persons who provide care for persons with disabilities.  Doe v. County of Centre, 242 F.3d 437, 447 (3rd Cir. 2001).  Organizations have representational standing to file claims under the ADA if the organization alleges that one of its members has been injured by a proscribed act.  Swanson v. City of Lowell, 2002 U.S. Dist. LEXIS 14389 (D. Mass. 2002).

4.     The plaintiff, Peter A. Spalluto, resides at 1620 North Ocean Boulevard, Pompano Beach, FL 33062.  Mr. Spalluto is a quadriplegic who relies completely upon a wheelchair for ambulation. He suffered a spinal cord injury in a swimming pool accident in 1966 when he was

twenty years old. He is a qualified individual with disabilities under the ADA and all other applicable federal and state statutes.

5. The defendant, HDP, Inc., (hereinafter "HDP") is a corporation organized under the laws of the state of Massachusetts. HDP is registered to do business within Massachusetts as a domestic profit corporation. HDP has a principal place of business 45 Broad Street, Boston, MA 02109.

6. The defendant, HDP, owns and operates the restaurant and bar known as Bakey's, 45 Broad Street, Boston, Massachusetts 02109.

7. HDP is a place of public accommodation subject to the requirements of the Title III of the ADA.

8. The defendant, HDP, is a private entity that owns a public accommodation as defined in the Title III of the ADA, 42 U.S.C. § 12181(7)(E).

9. The defendant, HDP, is a private entity which operates a public accommodation as defined in Title III of the ADA, 42 U.S.C. § 12181, and is an entity that affects commerce and which owns a public accommodation as defined in 42 U.S.C. § 12181(7)(E).

### SYNOPSIS OF A CAUSE OF ACTION UNDER ADA

10. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *42 U.S.C. § 12182(a).*

11. The ADA public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur. A plaintiff with

a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. *42 U.S.C. § 12188(a)(1)*. The "futile gesture" provision extends so far as to allow a person who uses a wheelchair to challenge the *planned* construction of a new place of public accommodation, such as a shopping mall, that would not be accessible to individuals who use wheelchairs. The resolution of such challenges prior to the construction of an inaccessible facility would enable any necessary remedial measures to be incorporated in the building at the planning stage, when such changes would be relatively inexpensive.

12. This case arises out of the defendants' unlawful practice of denying access to the facilities, goods and services offered at HDP to persons with disabilities.

## JURISDICTION

13. The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343 in that this action arises under the laws of the United States and the defendants are subject to personal jurisdiction.

14. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the Massachusetts.

16. On September 7, 2004, Mr. Spalluto visited Boston and planned to have lunch with friends at Bakey's. He called ahead to find out whether he could get inside and be served at a table in his electric wheelchair. He was told that this would be no problem because there is an accessible side entrance. When Mr. Spalluto arrived, he discovered that both entrances had steps

that he could not use in an electric wheelchair. He was denied access to the facilities, goods and services of HDP due to its lack of accessibility and a lack of compliance with the ADA's requirements regarding the removal of architectural barriers to access by persons with disabilities.

17.     Mr. Spalluto wishes to patronize Bakey's in the future, but continues to be denied full and safe access to the restaurant due to the ADA violations that continue to exist there. He cannot get inside, much less be served like anyone else once inside.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

18.     All events giving rise to this lawsuit occurred in the state of Massachusetts.

19.     On or about July 26, 1990, Congress enacted the ADA, which is codified at 42 U.S.C. § 12181 and 28 C.F.R. Part 36.

20.     The defendant has discriminated against the plaintiffs and continues to discriminate against the plaintiffs by denying them access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of HDP as prohibited by 42 U.S.C. § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible as required by 42 U.S.C. § 12183(a)(2).

21.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA. The regulations are codified at 28 C.F.R. Part 36. The regulations are known as the "ADAAG's" or the "Americans with Disabilities Act Accessibility Guidelines."

22.     Bakey's is a place of public accommodation subject to the provisions of Title III of the ADA.

23. With respect to altered facilities under the ADA, discrimination constitutes "a failure to make alterations in such manner that, to maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *42 U.S.C. § 12183(a)(2).*

24. All alterations that could affect the usability of a facility must be made in an accessible manner to the maximum extent feasible. For example, if during renovations a doorway is being relocated, the new doorway must be wide enough to meet the new construction standard for accessibility. When alterations are made to a primary function area, such as the restaurant or lounge of a hotel lobby, an accessible path of travel to the altered area must also be provided. The bathrooms, telephones, and counters serving that area must also be made accessible. These additional accessibility alterations are required to the extent that the added accessibility costs do not exceed 20% of the cost of the original alteration. On information and belief, HDP has made renovations since January 26, 1992 such that including accessibility features was mandatory.

25. Mr. Spalluto attempted to visit Bakey's on September 7, 2004.

26. Mr. Spalluto called ahead to Bakey's to inquire as to whether he could gain access to the restaurant in his wheelchair.

27. Mr. Spalluto was told by an employee of HDP who answered his phone call that he would be able to gain access to the restaurant in his wheelchair.

28. During his visit to HDP, Mr. Spalluto observed, encountered, and suffered discrimination as a result of architectural barriers to access at Bakey's.

29. Mr. Spalluto intends to return to Bakey's as soon as the architectural barriers to access are removed.

30. Upon arriving for his visit on September 7, 2004, Mr. Spalluto observed and encountered the architectural barriers to access set forth below.

31. There are no ramps at Bakey's that allow disabled persons to gain access to the restaurant.

32. There are no accessible routes from the street, sidewalk, and parking areas, in violation of the requirements of Sections 4.3.2., 4.5.2, 4.7.1 and 4.8.2. of the ADAAG.

33. The doors at several of the building entrances are fitted with inaccessible hardware at the facility in violation of Section 4.13.9 of the ADAAG.

34. There are rises at the thresholds of the entrances at the facility in excess of ¾ of an inch, in violation of 4.5.2 and 4.13.8 of the ADAAG.

35. The clear width and/or maneuvering clearances at doors to the facility are less than the prescribed minimums, in violation of 4.13.5 and 4.13.6 of the ADAAG.

36. The doors at this facility lack the required maneuvering clearances in violation of 4.13.6 and Figure 25 of the ADAAG.

37. The interior doors in several locations of the building require excessive force to open in violation of 4.13.11 of the ADAAG.

38. The stairs provided at the facility do not comply with the standards prescribed in 4.9 of the ADAAG.

39. There is no continuous path of travel connecting all essential elements of the facility, in violation of 4.3.1 and 4.3.2 of the ADAAG.

40. There is no means of emergency egress or area of rescue assistance provided at the facility violating the requirements of 4.3.11 of the ADAAG.

41. There are protruding objects present throughout the facility, in violation of 4.4 of the ADAAG.

42. There are permanently designated interior spaces without proper signage in violation of 4.30.6 of the ADAAG.

43. There is insufficient clear floor space to access goods or services at the facility, in violation of several Sections of the ADAAG.

44. There is fixed or built in seating provided at the facility that does not comply with the standards prescribed in Section 4.32 of the ADAAG.

45. There are no disabled bathrooms at this facility in violation of several ADAAGs.

46. There are exposed pipes in the restrooms in the facility, in violation of 4.19.4 of the ADAAG.

47. The sinks in the restroom provided do not meet the requirements prescribed in 4.24 of the ADAAG.

48. The restroom doors have improper hardware for disabled patrons, in violation of 4.13.9 of the ADAAG.

49. The clear floor space provided in the restroom violates the provisions of 4.2.1, 4.18.3 and 4.22 of the ADAAG.

50. The urinals provided in the restrooms for public use do not comply with the standards set forth in 4.18.3 and 4.22 of the ADAAG.

51. The toilet stalls provided for public use at the facility are in violation of 4.17 of the ADAAG.

52. The dispensers provided in the restrooms for public use have controls outside the ranges prescribed in 4.27 of the ADAAG.

53.     The toilet flush control in the restrooms for public use has side entry that does not comply with the requirements of Section 4.16.3 of the ADAAG.

54.     The defendant has failed to remove barriers to access by persons with mobility disabilities at Bakey's where such barrier removal is readily achievable.

55.     The defendant has failed to provide necessary auxiliary aids and services at Bakey's where provision of such auxiliary aids and services would not pose any undue economic or architectural burden.

56.     The defendant has failed to modify policies and procedures at HDP where required to ensure equal access for persons with disabilities.

57.     The defendant has altered HDP without complying with access requirements mandated by Title III of the ADA.

58.     On information and belief, the plaintiffs allege that there are other violations present at Bakey's that will be more fully alleged upon discovery and further inspection.

59.     The defendant has not made efforts required under the ADA to remove such barriers to the extent readily achievable nor has the defendant complied with accessibility standards to the maximum feasible.

60.     The defendant has also, by maintaining such barriers, failed to comply with ADA and access requirements for areas of new construction or alteration.

61.     All alterations that could affect the usability of a facility must be made in an accessible manner to the maximum extent feasible.

62.     The actions and initiatives that the defendant has failed to undertake in order to make Bakey's accessible to persons with disabilities are actions and initiatives that would be readily

achievable, required by law, and would greatly assist persons with mobility disabilities at minimal expense to the defendants.

63.     The defendant's conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendant will continue to violate the ADA.  Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiffs have no adequate remedy at law.

WHEREFORE, The plaintiffs request that the Court will order the defendant, HDP, to alter Bakey's to make it readily accessible to and useable by individuals with disabilities to the extent required by the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36 and award the plaintiff appropriate attorney's fees and costs of this suit as provided by 42 U.S.C. s. 12205.

## COUNT II – MASSACHUSETTS GENERAL LAWS c. 272, s. 98

64.     The plaintiffs repeat the preceding allegations as if set forth completely here.

65.     Under Massachusetts General Laws c.272, § 98, "All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable to all persons.  This right is recognized and declared to be a civil right."

66.     As stated above in Count I, the plaintiffs have been denied equal access to a place of public accommodation in violation of their civil rights because of the above-described barriers to wheelchair access at Bakey's located at 45 Broad Street, Boston, MA 02109.

67.     Until the above-described barriers to wheelchair access are removed from Bakey's, the plaintiffs will continue to be denied equal access to a place of public accommodation in violation of his civil rights.

68.     Peter Spalluto initiated his claim under Massachusetts General Laws c. 272, § 98 by filing a Charge of discrimination and Statement of Particulars with the Massachusetts Commission Against Discrimination on January 21, 2005 and by requesting in writing on February 2, 2005 that the MCAD release his claim for judicial determination.

WHEREFORE, Peter Spalluto demands all injunctive relief compensatory and exemplary damages permitted by statute and all attorneys' fees and costs permitted by statute.

### COUNT III-MASSACHUSETTS CONSTITUTION and G.L. C.93 § 103

69.     The plaintiffs repeat the preceding allegations as if fully set forth here.

70.     Article 114 of the Massachusetts Constitution prohibits discrimination on the basis of a person's disability within Massachusetts.

71.     Implementing Article 114 to the Massachusetts Constitution, G.L. c.93 § 103, the Massachusetts Equal Rights Law, guarantees person with disabilities the same rights as other persons, such as the right to make contracts, to purchase personal property, to participate in lawsuits and to receive the full benefit and protection of the laws.  Section 103(a) of Chapter 93 of the Massachusetts General Laws provides "Any person within the commonwealth, regardless of handicap or age as defined in chapter one hundred fifty-one B, shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts, inherit, purchase, lease, sell, hold and convey real and personal property, sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under Article CXIV of the Amendments to the Constitution."

72.     As described in Count I, Peter Spalluto has been excluded from full and equal participation in patronizing Bakey's to the same extent as non-disabled patrons.  Based upon the

totality of the circumstances, Mr. Spalluto has been denied the benefits afforded to non-disabled patrons. He has been subject to ongoing discrimination by the defendant solely by reason of his disability as prohibited by Article 114 of the Massachusetts Constitution and G.L. c.93 § 103.

73. The plaintiff has been distressed and inconvenienced by the discriminatory actions of the defendant, including its failure to remove access barriers at Bakey's and its failure to modify policies and procedures to accommodate disabled customers such as Mr. Spalluto.

74. The plaintiff's constitutional right to be free from discrimination in the Commonwealth of Massachusetts has been and continues to be violated by the defendant and he is therefore entitled to compensatory and exemplary damages for his injuries.

75. The plaintiff initiated his claim under Massachusetts General Laws c. 93, § 103 by filing a Charge of Discrimination and Statement of Particulars with the Massachusetts Commission Against Discrimination on January 21, 2005 and by requesting in writing on February 2, 2005 that the MCAD release his claim for judicial determination.

WHEREFORE, the plaintiff demands compensatory and exemplary damages as permitted under Section 103(b) of Chapter 93 of the Massachusetts General Laws and an award of the costs and litigation and reasonable attorneys' fees in an amount to be determined by the court as permitted under Section 103(c) of Chapter 93 of the Massachusetts General Laws.

**THE PLAINTIFFS DEMAND A JURY TRIAL ON ALL COUNTS SO TRIABLE.**

    Respectfully submitted,
    The Plaintiffs,

    ACCESS WITH SUCCESS, INC. and
    PETER A. SPALLUTO,

    By their Attorneys,

/s/Nicholas S. Guerrera
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800


/s/ Ann Marie Pattavina
Ann Marie Pattavina, BBO#565910
Law Office of Ann Marie Pattavina
Two Dundee Park – 3rd Floor
Andover, MA 01810
(978) 247-7188


/s/ Michael J. Bellanti
Michael J. Bellanti, BBO#645405
Law Office of Michael J. Bellanti
Two Dundee Park – 3rd Floor
Andover, MA 01810
(978) 247-7188

Dated:2/1/06