UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER A. SPALLUTO <br> and ACCESS WITH SUCCESS, INC., <br>                 Plaintiffs <br><br> v. <br><br> HDP, INC., <br>                 Defendant | ) <br> ) <br> ) CIVIL ACTION NO.: 05-cv-10385EFH <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' PRE-TRIAL MEMORANDUM**

**(1)**     **Concise Summary of Evidence**

      The plaintiff, Peter A. Spalluto, is a quadriplegic who relies completely upon a wheelchair for ambulation. He suffered a spinal cord injury in a swimming pool accident in 1966 when he was twenty years old.  He is a qualified individual with disabilities under the ADA and all other applicable federal and state statutes.  The defendant, HDP, Inc. owns and operates the restaurant and bar known as Bakey's, 45 Broad Street, Boston, Massachusetts.  HDP is a private entity that owns a public accommodation as defined in the Title III of the ADA, 42 U.S.C. § 12181(7)(E).

      Mr. Spalluto is a frequent visitor to Boston.  He has come to Boston once or twice per year for many years.  On September 7, 2004, he was in Boston and planned to have lunch with friends at Bakey's.  He called ahead to find out whether he could get inside and be served at a table in his electric wheelchair.  He was told that this would not be a problem because there is an accessible side entrance.  When Mr. Spalluto arrived, he discovered that all entrances had steps that he could not use in an electric wheelchair.  He was denied access to the facilities, goods and services of HDP due to its lack of

accessibility and a lack of compliance with the ADA's requirements regarding the removal of architectural barriers to access by persons with disabilities. Mr. Spalluto wishes to patronize Bakey's in the future, but continues to be denied full and safe access to the restaurant due to the ADA violations that continue to exist there. He cannot get inside, much less be served like anyone else once inside.

**(2)     Facts Established by Pleadings, Stipulations or Admissions**

There are three doors into Bakey's. The main entrance door is on Broad Street. This entrance has four stair rises from the public sidewalk to the top landing. The parties agree that it is not readily achievable to provide a lift or ramp at this main entrance.

There are two additional doors located on Water Street. The door situated to the left leads to the main bar area, dining area and restrooms. This entrance has four stair rises and the top landing is approximately thirty inches above the sidewalk grade. The parties agree that it is not readily achievable to provide a lift or ramp at this Water Street entrance.

The door situated to the right on Water Street leads to the lower dining area of Bakey's and has a step that is six to twelve inches above the public sidewalk. The parties agree that it is not readily achievable to provide a ramp with a 1:12 slope at this entrance.

**(3)     Contested Issues of Fact**

(a)     Plaintiff's Statement of Contested Issues

There are readily achievable alterations that the defendant could and should make within Bakey's to remove barriers to access by persons with disabilities. The solutions to the access problems are specified in a report dated September 1, 2006 by plaintiff's

expert, Pablo Baez, Herb Neff & Associates, 2500 North Federal Highway, #223, Boca Raton, FL.  Mr. Baez inspected Bakey's on June 16, 2006.

Based on Mr. Baez' report, the plaintiffs seek injunctive relief that requires the defendant to remove barriers to wheelchair access as follows:

1.	The plaintiffs contend that it would be readily achievable for the defendant to provide a modular ramp at door situated to the right on Water Street or a portable ramp of the greatest possible length and the least possible slope with due consideration for the dimensions of the adjacent public sidewalk.  The defendant's expert, Joseph Cooney disagrees with this conclusion.

2.	The plaintiffs contend that in compliance with ADAAG 4.1.2(7)(d) the defendant should place directional signage at the inaccessible entrances to indicate the route to the accessible entrance on Water Street.  The mounting height of the signs should be 60 inches above the public sidewalk to the centerline of the sign in accordance with ADAAG 4.30.6.  If a portable ramp (instead of a permanent modular ramp) would be used at the accessible entrance, the defendant should provide an electric doorbell there.  The electric doorbell should be designed to notify staff that a patron needs the portable ramp.  Additionally, the directional signage should include language that instructs patrons to use the doorbell to request a portable ramp.

3.	The plaintiffs contend that in compliance with ADAAG 4.9.4, the exterior stairways on Broad Street and Water Street should have handrails at both sides of the stairs. The handrails should comply with ADAAG 4.26.

4.	The plaintiffs contend that the defendant should install exit door signage at all exits from the restaurant and bar.   The exit door signage should comply with ADAAG

3

4.30 (raised and brailled characters and pictograms), 4.30.5 (contrast of background and characters) and 4.30.6 (mounting height of 60 inches above the finished floor to centerline of sign).

5.      The plaintiffs contend that the defendant should install handrails on the interior staircase between the bar and lower dining area. The handrails should comply with ADAAG 4.26.

6.      The plaintiffs contend that the door hardware on all doors should be operable with one hand and should not require tight grasping, pinching, or twisting of the wrist to operate, in accordance with 4.13.9 and 4.27.4 of the ADAAG. The defendant should install accessible door hardware on all doors within the facility in compliance with ADAAG 4.13.9.

7.      The plaintiffs contend that the designated accessible restroom should have a sign that complies with ADAAG 4.30, (raised and brailled characters and pictograms), 4.30.5 (contrast of background and characters) and 4.30.6 (mounting height of 60 inches above the finished floor to centerline of sign) and 4.30.7 (international symbol of accessibility).

8.      The plaintiffs contend that in compliance with 4.13.5 of the ADAAG all interior doors used by the public, including the door to the designated accessible restroom, should have thresholds that are 3/4 inch or less and all newly constructed or installed doors should have thresholds that are 1/2 inch or less, and should be beveled or otherwise modified to a slope of no greater than 1:2, as required by 4:13.8, 4.1 .6(3)(d)(ii) and 4.5.2 of the ADAAG.

9.      The plaintiffs contend that in compliance with ADAAG 4.16.4, the defendant should install a rear grab bar next to the toilet in the designated accessible restroom. The

rear grab bar should be at least 36 inches long.  It should be horizontally mounted between 33 and 36 inches above the floor.  It should have the end closer to the side wall.  It should be mounted at least 12 inches from the centerline of the toilet.

10. The plaintiffs contend that in compliance with ADAAG 4.19.2, the defendant should install a lavatory sink with a rim or top counter surface no higher than 34 inches above the finish floor.  In compliance with ADAAG 4.24.3, the defendant should install a lavatory sink with a knee clearance underneath that is at least 27 inches high, 30 inches wide, and 19 inches deep.  There should be no sharp or abrasive surfaces under the sink.  The defendant should insulate the pipes and drain pipes under the lavatory sink to protect against contact in compliance with ADAAG 4.24.6.

11. The plaintiffs contend that in compliance with ADAAG 4.19.6, the defendant should re-mount the mirror above the sink with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor.

12. The plaintiffs contend that the defendant should mount at least one coat hook on the restroom door or on a wall.  The coat hook should be no higher than 48 inches above the finish floor as prescribed by 4.2.5 and Figure 5(a) of the ADAAG.

13. The plaintiffs contend that the defendant should mount paper towel dispensers so that the contents and operational controls are reachable at a height not exceeding 48 inches above the finish floor as prescribed by 4.2.5 and Figure 5(a) of the ADAAG, if access is limited to forward reach, or reachable at a height not lower than 9 inches or higher than 54 inches, in compliance with 42.6 and Figure 6 of the ADAAG, if access may be obtained through side reach. Additionally, there should be a clear floor space in

front of the dispensers of no less than 30 by 48 inches, in compliance with 4.2.4.1 and Figure 4(a) of the ADAAG.

14.     The plaintiffs contend that the accessible restroom should have audible and visual (strobe) emergency notification devices in compliance with 4.28 of the ADAAG.

15.     The plaintiffs contend that no toilet paper dispensers or other appliances should be mounted above the grab bars in the accessible restroom stalls.

16.     The plaintiffs contend that in compliance with ADAAG 4.5.3, the defendant should remove the existing rug in the lower dining area or replace it with a low pile carpeting or rug that is properly secured.  The rug or carpet should have a firm cushion, pad, or backing, or no cushion or pad; and have a level loop, textured loop, level cut pile, or level cut/uncut pile texture. The maximum pile thickness should be 1/2 inch.  Exposed edges of the rug or carpet should be fastened to floor surfaces and have trim along the entire length of the exposed edge. Edge trim should comply with ADAAG 4.5.2.  The trim should meet ADAAG 4.5.2 requirements for changes in level.

17.     The plaintiffs contend that in compliance with ADAAG 4.32 and ADAAG 5.1, the defendant should provide access to 5% of fixed or built-in tables distributed throughout the dining areas.  There should be a clear width of at least 36 inches between all table edges and walls.  The accessible tables should have a knee space underneath that is at least 27 inches high, 30 inches wide, and 19 inches deep in compliance with ADAAG 4.32.3.

**(4)     Jurisdictional Questions**

There are no jurisdictional questions.

**(5)     Questions Raised by Pending Motions**

There are no questions raised by pending motions.

**(6)** **Issues of Law and Evidentiary Questions**

    (a)    Plaintiffs' Statement of the Applicable Law

42 U.S.C. § 12182 prohibits discrimination by public accommodations. It states:

> "(a) General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

42 § 12182(2)(A)(iv) provides that "discrimination" under subsection (a) includes:

> "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."

If removal of barriers is not "readily achievable," 42 U.S.C. § 12182(b)(2)(A)(v) requires delivery of goods and services by alternate means. See also 28 C.F.R. 36.305.

Under 42 USC § 12181(9) the term "readily achievable" means:

> "easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include—
>
> (A)    the nature and cost of the action needed under this Act;
>
> (B)    the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C)    the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (D)    the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity."

It is the plaintiff's position, based upon evidence produced in discovery, that the HDP has adequate financial resources to accomplish readily achievable barrier removal.

The federal regulations provide 21 examples of "readily achievable" barrier removal. 28 CFR § 36.304, "Removal of barriers," provides:

> "(a) General. A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

> (7) Installing flashing alarm lights;

> (8) Widening doors;

> (9) Installing offset hinges to widen doorways;

> (10) Eliminating a turnstile or providing an alternative accessible path;

> (11) Installing accessible door hardware;

> (12) Installing grab bars in toilet stalls;

> (13) Rearranging toilet partitions to increase maneuvering space;

> (14) Insulating lavatory pipes under sinks to prevent burns;

> (15) Installing a raised toilet seat;

> (16) Installing a full-length bathroom mirror;

> (17) Repositioning the paper towel dispenser in a bathroom;

> (18) Creating designated accessible parking spaces;

> (19) Installing an accessible paper cup dispenser at an existing inaccessible water fountain;

> (20) Removing high pile, low density carpeting; or

(21)   Installing vehicle hand controls."

The federal regulations also establish priorities in barrier removal.  28 CFR § 36.304(c) provides:

"Priorities. A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities.

(1)   First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces.

(2)   Second, a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables, providing Brailled and raised character signage, widening doors, providing visual alarms, and installing ramps.

(3)   Third, a public accommodation should take measures to provide access to restroom facilities. These measures include, for example, removal of obstructing furniture or vending machines, widening of doors, installation of ramps, providing accessible signage, widening of toilet stalls, and installation of grab bars.

(4)   Fourth, a public accommodation should take any other measures necessary to provide access to the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation."

The plaintiffs contend that that they will be entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 12205 if they prevail in this matter.

**(7)   Requested Amendments to Pleadings**

There are no requested amendments to pleadings.

**(8)   Additional Matters to Aid in the Disposition of the Action**

On October 19, 2006, the plaintiffs provided the defendant with a draft Consent Decree that encompasses the matters specified in Plaintiff's Statement of Contested Issues above.  The plaintiffs also provided a demand for reimbursement of attorneys'

9

fees, case costs, and for damages under Counts II and III. The defendant has not had sufficient time to respond.

Under Local Rule 16.5(A), "The judicial officer to whom the case is assigned for trial may set a new date for the final pretrial conference if that judicial officer determines that resolution of the case through settlement or some other form of alternative dispute resolution is imminent." The plaintiffs believe that the Court should set a new date for the final pretrial conference and refer the case to mediation within the court-sponsored ADR program.

**(9)     Probable Length of Trial**

The trial of this case should take two or three days.

**(10)    Names, Addresses and Telephone Numbers of Witnesses**

(a)     Plaintiffs' Witnesses

Pablo Baez
Herb Neff & Associates
2500 North Federal Highway, #223
Boca Raton, FL  33431
(561) 338-7594

Peter A. Spalluto
1620 North Ocean Boulevard
Pompano Beach, FL 33062
(954) 942-7129

Michael Paquin
HDP, Inc.
45 Broad Street
Boston, MA 02109
(617) 426-1710

**(11)    Proposed Exhibits**

(a)     Plaintiffs' Proposed Exhibits

1.      Report dated September 1, 2006 by plaintiff's expert, Pablo Baez, Herb Neff & Associates, 2500 North Federal Highway, #223, Boca Raton, FL.

2.      Photographs of Bakey's within report of Pablo Baez.

3.      Report dated from April 16, 2006 by defendant's expert, Joseph Cooney.

**(12)    Parties' Objections to Evidence in Fed. R. Civ. P. 26(a)(3) Pretrial Disclosure**

The plaintiff has no objections.

Respectfully submitted,

The Plaintiff, Peter A. Spalluto,

By his Attorneys,

/s/Nicholas S. Guerrera
Nicholas S. Guerrera, BBO#551475
Shaheen, Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by hand pursuant to Fed. R. Civ. P. 5.

Dated: October 24, 2006          /s/Nicholas S. Guerrera
                                 Nicholas S. Guerrera