**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

PETER A. SPALLUTO                      )
and ACCESS WITH SUCCESS, INC.          )
    Plaintiffs                         )
                    )        CIVIL ACTION NO.:
    Vs.                                )        05-CV-10385-EFH
                    )
HDP, INC.,                             )
    Defendant                          )

## DEFENDANT HDP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR PLAINTIFFS' FAILURE TO ATTEND DEPOSITIONS AS ORDERED BY THE COURT

### STATEMENT OF FACTS

On or about February 23, 2005 the plaintiffs commenced this action by filing their complaint in this court. The complaint seeks monetary damages and injunctive relief, *inter alia*, arising under the Americans with Disabilities Act, 42 USC, sec. 12101, *et seq.*, and similar relief arising from pendant claims pursuant to Massachusetts law.

The defendant is a restaurant and bar located at 45 Broad Street, Boston, Massachusetts, known as "Bakey's". The original complaint incorrectly identified the owner of the restaurant as "Bakey's, Inc.". Some time prior to February 1, 2006, plaintiffs filed, by way of assented-to motion, an amended complaint correctly identifying the owner of the restaurant, HDP, Inc.

Plaintiff Spalluto alleges that he suffered discrimination and other damages on or about September 7, 2004 because he is wheelchair bound and attempted to eat at Bakey's, but was unable to do so because architectural barriers prevented him from entering the premises.

Plaintiff Access identifies itself as a charitable corporation whose corporate purposes include advocating for the rights of persons with disabilities to have equal access to facilities such as restaurants and bars.  Access alleges that it is an injured person and entitled to bring this action because one of its members, Mr. Spalluto, was denied access to Bakey's.

HDP, Inc. has denied that it caused damages or that it discriminated against either plaintiff.  It is of significance that the plaintiffs, to create an actionable complaint, allege that "*[u]pon information and belief, HDP has made renovations since January 26, 1992* [i.e., the effective date of the Americans with Disabilities Act] *such that including accessibility features was mandatory.* "  [Plaintiffs' complaint, Paragraph 24]  In fact, no such renovations have ever been made since the premises opened in the late 1980's.

The defendant began attempting to take the depositions of the plaintiffs after the appearance of undersigned counsel.  Efforts to schedule the depositions at a mutually convenient time were unsuccessful. Defendant served notices for the depositions of the plaintiffs for November 6, 2006.  On November 3, 2006, plaintiffs' counsel contacted defendant's counsel to inform him that Mr. Spalluto, a Florida resident, would not appear for his deposition.  He also explained that Mr. Spalluto was the 30(b) (6) spokesperson for Access, and, as he would not be appearing, neither deposition would go forward.

Subsequent to these events, or, "non-events", defendant moved for an order compelling the plaintiffs to appear for their depositions.  A copy of that motion and its attachments is attached hereto as "Exhibit 1".

On January 8, 2007, This Court entered an electronic order on the motion to compel. The order states: "Motion allowed. Failure to appear shall result in dismissal of case." (Emphasis added) [See Docket Report attached hereto as "Exhibit 2".]

After the ruling of the court, the defendant re-noticed the depositions of Mr. Spalluto and of Access, both for January 24, 2007[1]. [Copies of the notices are attached as Exhibits 3 and 4]

Mr. Spalluto did not appear for his deposition. [See Transcript, "Scheduled Deposition of Peter A. Spalluto", attached hereto as Exhibit 5.]

For the 30(b)(6) deposition of Access, plaintiffs' counsel produced a gentleman by the name of Dino N. Theodore, Esq., who affirmed, after being sworn, that he had been designated as the person who was to speak on behalf of Access with Success, Inc. [See "Deposition of Access With Success, Inc., attached hereto as "Exhibit 6, P.6, ll. 9-12.]

Schedule A to the 30(b)(6) deposition notice instructed Access that its spokesperson was to testify about three topics, the matters alleged in the complaint, the identities of persons having knowledge of the matters alleged in the complaint, and the activities of Access with respect to other actions or claims made under the Americans with Disabilities Act.

Attorney Theodore was unfamiliar with both basic information pertaining to Access with Success, Inc., and with the facts and circumstances of the present action. In fact, he testified that his only contact having anything to do with Access with Success

---

[1] The notices reflect the date of January 23, 2007 at the offices of defendant's counsel. By agreement of counsel, the depositions were both rescheduled for the following day, January 24, 2007, and the location was changed to the office of plaintiffs' counsel.

412558_1

insofar as arranging for his testimony as its spokesperson was communications with its counsel, attorney Guerrero. [Exhibit 6, P. 11, L.15 to P. 12, L.2]

Among other salient features of Mr. Theodore's testimony:

A.     He did not know how one becomes a member of Access. [Exhibit 6, P. 9, Ll. 13-17]

B.     He did not know if membership is restricted in any way. [Ex. 6, P. 11, Ll. 7-11]

C.     He did not know who would have that information. [Ex. 6., P. 11, Ll. 12-14]

D.     He is uncertain whether Access has a website. {Ex. 6, P. 17, Ll. 16-19]

E.     He is uncertain of the identity of the President of Access. [Ex. 6, P.19, Ll. 17-22]

F.     Apart from bringing legal actions, he does not know what services Access provides. [Ex. 6, P. 27, L. 9 to P. 28, L. 7.

G.     He does not know who would have that information. [Ex. 6, P. 28, LL. 8-12]

With respect to the matters alleged in the compliant, Mr. Theodore is one of fourteen persons who are identified, in the first numbered paragraph of the complaint, as being members of Access with Success, Inc.  Mr. Theodore, the corporation's spokesperson, testified that has never met any of the other thirteen persons identified as being members, although he does recognize some of their names as being parties, along

4

with Access, in some civil actions that have been brought in federal courts in Massachusetts and in New Hampshire.[2] [Ex. 6, P. 35, L. 3 to P. 43, L. 21]

He has no personal knowledge of the factual assertions contained in the complaint concerning the alleged discrimination against Mr. Spalluto on September 7, 2004. {Ex. 6, P. 51, Ll. 11-19]

He has no knowledge concerning the incorrect assertion, referred to at the beginning of this memorandum, that there have been renovations at the defendant's restaurant since the effective date of the act giving rise to this litigation. (Again, there have been no renovations.). He does not know who would have information concerning that assertion. [Ex. 6, P. 51, L.20 to P. 21, L. 14.]

In short, Mr. Theodore, as 30(b)(6) spokesperson for Access with Success, Inc., had no pertinent information concerning the any of the topics identified in Schedule A to deposition notice. To put it succinctly, his deposition was a waste of time and money, and a flagrant disregard for the order of this Court.

1.    **ARGUMENT**

**A. Peter A. Spalluto**

The plaintiffs' complaint should be dismissed by the Court with prejudice, forthwith. The plaintiffs refused to appear for their depositions when they were originally noticed for November 6, 2006. The defendant was forced by the plaintiffs' actions to seek the assistance of the Court. The Court granted the defendant's motion to

---

[2] Mr. Theodore was somewhat imprecise as to the number of civil actions brought by Access. He testified at one point there were four, he mentioned others, and estimated there were seven or eight altogether. [Ex. 6, PP. 12, L. 21 – P. 16, L. 22] In fact, there are 19 cases in this district and 10 cases in the district of New Hampshire in which Access is a plaintiff. Mr. Theodore also appears to be a plaintiff in 4 of them. {See Exhibit 7, attached hereto, which are downloads from PACER for the District of Massachusetts and the District of New Hampshire, showing cases in which Access is a plaintiff]

compel the plaintiffs to appear for their depositions, and explicitly stated the complaint would be dismissed if they failed to so appear.

Mr. Spalluto simply refused to appear, as his deposition transcript indicates. He never sought a protective order from this Court; he simply chose to ignore the Court's order and the deposition notice.

F.R.C.P. 37 (b)(2)(C) allows the Court to dismiss the action if a party fails to obey an order to provide discovery. Mr. Spalluto did precisely that. As Aldous Huxley noted in the foreword to his novel, *Brave New World,* "You pays your money and you takes your choice." Mr. Spalluto has done that, and now should face the consequences that this Court told him he would face, namely dismissal of his complaint.

Trial in this matter is scheduled for April 9, 2007. Mr. Spalluto has made himself unavailable for discovery since at least May 2006. Defendant cannot prepare for trial without the deposition of the plaintiffs, and should not have to do so. The appropriate sanction is dismissal, an action taken by this Court and affirmed by the 1st Circuit in the past. See, Young v. Gordon, 330 F3d 76 (1st Cir. 2003).

**B. Access With success, Inc.**

The conduct of the co-plaintiff in this matter is more egregious than that of Mr. Spalluto, who merely defied this court's order. Access did more: Access with Success ridiculed it.

The spokesperson allegedly selected by the corporation had never been contacted by the corporation, only by its attorney. He is ignorant of the activities of the corporation, ignorant of the facts alleged by it in its complaint, and ignorant of its membership, officers and directors. In short, attorney Theodore was no more than "a

warm body" sitting at a conference room table, with absolutely no information of relevance to the case, the plaintiffs' facts, or either plaintiff. He wasted the defendant's time and effort, and did so in defiance of this Court's order that the corporation appear, through a spokesperson, for its deposition.

That conduct, it is respectfully submitted, was reprehensible. It was certainly not a deposition by any stretch of the meaning of the term. Once again, attorney Theodore's appearance did not come after the corporation sought a protective order to limit in any way the timing, duration or scope of the deposition. His appearance as a spokesperson - was utterly ignorant regarding the topics listed on the deposition notice's schedule - made the exercise a complete waste of time and money.

The Rules regarding discovery do not countenance this conduct. F.R.C.P. 37, as cited above, gives this Court the authority to dismiss the complaint for failure to comply with a discovery order. Access With Success, Inc. did so, and its complaint should be dismissed.

The First Circuit does not countenance such conduct. Young v. Gordon, 330 F3d 76 (1st Cir. 2003), supra. See also, Damiani v. Rhode Island Hospital, 704 f. 2d 12 (1st Cir. 1983); Rivera Diaz v. American Airlines, Inc., 433 F.3d 120 (1st Cir. 2005).

In Diaz, supra, the First Circuit, citing HMG Prop. Investors, Inc. v. Parque Industrial Rio Canas, Inc., 847 F.2d 908 (1st Cir. 1988), points out :

> The law is well established in this circuit that where a
> noncompliant litigant has manifested a disregard for orders
> of the court and been suitably forewarned of the consequences of
> continued intransigence, a trial judge need not first exhaust milder
> sanctions before resorting to dismissal. Op. Cit. 847 F.2d, at 918.

7

Access with Success, Inc. is a plaintiff in at least nineteen separate actions appearing on the docket of the US District Court for the District of Massachusetts. It is a plaintiff in at least 10 other actions appearing on the docket of the New Hampshire District. It is no stranger to litigation; it should be no stranger to the Federal Rules of Civil Procedure and it should be no stranger when it comes to compliance with direct orders of this Court.

Its actions in this case are almost sinister, and warrant the determination that the deposition of attorney Theodore represents an explicit repudiation of this court's order. Dismissal is warranted and just in these premises.

Wherefore Defendant HDP, Inc. moves for the entry of an order dismissing the complaint against it as to both plaintiffs, with prejudice.

Respectfully submitted,
HDP, INC.
By its Attorney,


/s/ Brian J. McMenimen
_____
Brian J. McMenimen
BBO # 338840
Adler Pollock & Sheehan P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 482-0600
bmcmenimen@apslaw.com
Dated: March 22, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on March 22, 2007.


/s/ Brian J. McMenimen
_____
Brian J. McMenimen

*412558_1*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PETER A. SPALLUTO                      )
and ACCESS WITH SUCCESS, INC.          )
    Plaintiffs                         )
                                               )    CIVIL ACTION NO.:
    Vs.                                )    05-CV-10385-EFH
                                               )
HDP, INC.,                             )
    Defendant                          )
                                               )

## MOTION OF DEFENDANT, HDP, INC., FOR AN ORDER COMPELLING THE PLAINTIFFS, PETER A. SPALLUTO AND ACCESS WITH SUCCESS, INC., TO APPEAR FOR A DEPOSITION

The defendant, HDP, Inc., hereby moves that an Order issue from this Court compelling each of the plaintiffs herein, Peter A. Spalluto and Access with Success, Inc., to appear for their depositions at the office of the defendant's counsel, Brian McMenimen, of Adler, Pollock & Sheehan, P.C., 175 Federal Street, Boston, Massachusetts. As grounds for its motion, in addition to the accompanying memorandum of law, the defendant states:

1.     The defendant previously noticed the plaintiffs' depositions for November 6, 2006 at 10:00 a.m. and 12:00 p.m., respectively, to take place at Adler, Pollock & Sheehan, P.C., 175 Federal Street, Boston, Massachusetts. Notices of Deposition were properly served upon the plaintiffs' attorney, Nicholas S. Guerrera, Esq., Shaheen, Guerrera & O'Leary, LLC, Jefferson Office Park, 820A Turnpike Street, North Andover, MA 01845. Copies of the Notices of Deposition are attached hereto as Exhibit A.

2.     Plaintiffs' counsel telephoned defendant's counsel's office on Friday, November 3, 2006, to inform him that plaintiffs will not be attending the depositions scheduled for Monday, November 6, 2006. Counsel's explanation was that Mr. Spalluto resided Florida and did not

intend to return to Massachusetts at this time because he is wheelchair bound and prone to health problems in cold weather.

3.    Access with Success, Inc. is identified in the plaintiff's complaint as being a Massachusetts corporation.

4.    Plaintiff Spalluto has been represented to the Court by his counsel as "a frequent visitor to Boston". [See (1) (a), 2d paragraph, of the Plaintiff's pre-trial memorandum.]

5.    The plaintiffs brought their action against the defendant in the District of Massachusetts.

6.    Defendant has made efforts to depose the plaintiffs in the past, but those efforts were unsuccessful because Mr. Spalluto was not in Massachusetts at any time when the defendant's undersigned counsel was available to conduct his deposition.

7.    The defendant offered to postpone the depositions for one week, until November 13, 2006, in order to permit the plaintiffs to seek protective orders from the court regarding the taking of the depositions; however the plaintiffs have not sought a protective order regarding their depositions.

For all of the above reasons, the defendant moves that this Court issue an Order compelling the plaintiffs to appear for their depositions on February 16, 2007, or at an earlier time mutually agreeable to plaintiffs' counsel and defendant's counsel, at the offices of Adler, Pollock & Sheehan, P.C., 175 Federal Street, Boston, Massachusetts.

## REQUEST FOR ORAL ARGUMENT

Defendant HDP, Inc., requests oral argument on this motion, in the event the Court deems it would be helpful to hear from counsel.

Respectfully submitted,
HDP, INC.
By its Attorney,


/s/ Brian J. McMenimen
_____
Brian J. McMenimen
BBO # 338840
Adler Pollock & Sheehan P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 482-0600
bmcmenimen@apslaw.com
Dated: December 20, 2006


## CERTIFICATE OF COUNSEL

I, Brian McMenimen, attorney for the defendant, HDP, Inc., certify that counsel for the plaintiffs and counsel for the defendant have conferred and have attempted in good faith to resolve or narrow the scope of the issue presented in this motion.


/s/ Brian J. McMenimen
_____
Brian J. McMenimen


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on December 20, 2006.


/s/ Brian J. McMenimen
_____
Brian J. McMenimen

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER A. SPALLUTO and            )
ACCESS WITH SUCCESS, INC.        )
　　　　Plaintiff,                )        CIVIL ACTION NO.: 05-cv-10385EFH
                                 )
v.                               )
                                 )
HDP, INC.,                       )
　　　　Defendant.                )

## NOTICE OF TAKING 30(b)(6) DEPOSITION

To:    Nicholas S. Guerrera
       Shaheen, Guerrera & O'Leary, LLC
       Jefferson Office Park
       820A Turnpike Street
       North Andover, MA  01845

　　　　Please take notice that at 10:00 a.m. on Monday, November 6, 2006 at the offices of Adler Pollock & Sheehan, P.C., 175 Federal Street, Boston, Massachusetts, the defendant in this action, by its attorney will take the deposition upon oral examination of Access With Success, Inc. pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, before Mahaney Reporting Services, Notary Public in and for the Commonwealth of Massachusetts, or before some other officer authorized by law to administer oaths.  The defendants requests that Access With Success, Inc. designate one or more officers, directors, managing agents, or other persons who consent to being designated to testify pursuant to Fed. R. Civ. P. 30(b)(6) on the matters described in Schedule A.

　　　　You are invited to attend and cross-examine.

                          Respectfully submitted,
                          DEFENDANTS
                          HDP, INC.
                          By its attorney,


                          Brian McMenimen, BBO # 338840
                          ADLER POLLOCK & SHEEHAN, P.C.
                          175 Federal Street
                          Boston, MA 02110
                          (617) 482-0600 Telephone
                          (617) 482-0604 Facsimile

Dated: October 24, 2006
397332_1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 2/21/1/02

Schedule A

1.  Every matter and assertion alleged in the plaintiffs' complaint, including the factual basis for the assertion appearing in paragraph 24 that HDP, Inc. has made renovations to the premises since January 26, 1992.

2.  The identity of persons who have personal knowledge of the matters alleged in the complaint.

3.  the activities of the plaintiff with respect to other claims made or actions commenced by it under the Americans with Disabilities Act.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PETER A. SPALLUTO and | ) | |
| ACCESS WITH SUCCESS, INC. | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: 05-cv-10385EFH |
| | ) | |
| v. | ) | |
| | ) | |
| HDP, INC., | ) | |
| Defendant. | ) | |

## NOTICE OF TAKING DEPOSITION

To:   Nicholas S. Guerrera
      Shaheen, Guerrera & O'Leary, LLC
      Jefferson Office Park
      820A Turnpike Street
      North Andover, MA  01845

Please take notice that at 12:00 p.m. on Monday, November 6, 2006 at the offices of Adler Pollock & Sheehan, P.C., 175 Federal Street, Boston, Massachusetts, the defendant in this action, by its attorney will take the deposition upon oral examination of Peter Spalluto pursuant to the Federal Rules of Civil Procedure, before Mahaney Reporting Services, Notary Public in and for the Commonwealth of Massachusetts, or before some other officer authorized by law to administer oaths.

You are invited to attend and cross-examine.

Respectfully submitted,
DEFENDANTS
HDP, INC.
By its attorney,

Brian McMenimen, BBO # 338840
ADLER POLLOCK & SHEEHAN, P.C.
175 Federal Street
Boston, MA 02110
(617) 482-0600 Telephone
(617) 482-0604 Facsimile

Dated: October 24, 2006

397375_1

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail hand on

**Motions**
 1:05-cv-10385-EFH Spalluto et al v. HDP, Inc.

## United States District Court

## District of Massachusetts

Notice of Electronic Filing

The following transaction was received from McMenimen, Brian J. entered on 12/20/2006 at 2:19 PM EST and filed on 12/20/2006
**Case Name:**          Spalluto et al v. HDP, Inc.
**Case Number:**        1:05-cv-10385
**Filer:**              HDP, Inc.
**Document Number:** 14

**Docket Text:**
MOTION to Compel by HDP, Inc.. (Attachments: # (1) Exhibit Copies of deposition notices)(McMenimen, Brian)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=12/20/2006] [FileNumber=1697319-0] [3f144df1d2ca9435a661731a4f77d4ae3e1d6d4c4c13e9e129768b598b4d2fb147 69c27701378830f90ed484a9b34a2d22f52a5af83d4ff4e03f4fdac2b4299c]]
**Document description:**Exhibit Copies of deposition notices
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=12/20/2006] [FileNumber=1697319-1] [8cb7b4095f5e6d6d1629603f09d7aa7b637485769eddc07753a53be832c03f7cb7 2d34ef2a13d8c1e17112d617f93be29a5f6545b7b5449c9a8cddf3b5f3b69b]]

**1:05-cv-10385 Notice will be electronically mailed to:**

Nicholas S. Guerrera    nguerrera@sgolawoffice.com

Brian J. McMenimen    bmcmenimen@apslaw.com

**1:05-cv-10385 Notice will not be electronically mailed to:**

## United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:05-cv-10385-EFH

Spalluto et al v. HDP, Inc.

Assigned to: Senior Judge Edward F. Harrington

Cause: 28:1983 Civil Rights

Date Filed: 02/28/2005

Jury Demand: Both

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

**Peter A. Spalluto**

represented by **Nicholas S. Guerrera**
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
978-689-0800
Fax: 978-794-0890
Email: nguerrera@sgolawoffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Access With Success, Inc.**

represented by **Nicholas S. Guerrera**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bakey's Incorporated**
*TERMINATED: 01/31/2006*

**Defendant**

**HDP, Inc.**

represented by **Brian J. McMenimen**
Adler, Pollock & Sheehan
175 Federal Street
Boston, MA 02110
617-482-0600
Fax: 617-482-0604
Email: bmcmenimen@apslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/28/2005 | 1 | COMPLAINT against Bakey's Incorporated Filing fee: $ 250, receipt number 62378, filed by Peter A. Spalluto, Access With Success, Inc.. (Attachments: # 1 Civil Cover Sheet# 2 Catagory Sheet)(Holahan, Sandra) (Entered: 03/01/2005) |

| | | |
|---|---|---|
| 02/28/2005 | | If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge SOROKIN. (Holahan, Sandra) (Entered: 03/01/2005) |
| 02/28/2005 | | Summons Issued as to Bakey's Incorporated. (Holahan, Sandra) (Entered: 03/01/2005) |
| 02/28/2005 | 2 | CORPORATE DISCLOSURE STATEMENT by Access With Success, Inc.. (Holahan, Sandra) (Entered: 03/01/2005) |
| 03/17/2005 | 3 | SUMMONS Returned Executed Bakey's Incorporated served on 3/9/2005, answer due 3/29/2005. (Holahan, Sandra) (Entered: 03/22/2005) |
| 12/13/2005 | | NOTICE of Hearing: Status Conference set for 1/31/2006 11:00 AM in Courtroom 13 before Senior Judge Edward F. Harrington. (Holahan, Sandra) (Entered: 12/13/2005) |
| 01/25/2006 | 4 | Assented to MOTION for Leave to File *Amended Complaint* by Access With Success, Inc.. (Attachments: # 1)(Guerrera, Nicholas) (Entered: 01/25/2006) |
| 01/31/2006 | 5 | NOTICE of Appearance by Brian J. McMenimen on behalf of Bakey's Incorporated (McMenimen, Brian) (Entered: 01/31/2006) |
| 01/31/2006 | | Judge Edward F. Harrington : Electronic ORDER entered granting 4 Motion for Leave to File. MOTION ALLOWED. cc/cl *** Counsel using the Electronic Case Files system should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. (Holahan, Sandra) (Entered: 01/31/2006) |
| 01/31/2006 | | ElectronicClerk's Notes for proceedings held before Judge Edward F. Harrington : Status Conference held on 1/31/2006. Counsel for parties appear; Court allows plaintiff's motion to amend complaint; Parties to stipulate to discovery dates; Order to issue scheduling final pretrial conference; (Court Reporter none.) (Holahan, Sandra) (Entered: 02/01/2006) |
| 01/31/2006 | 7 | Judge Edward F. Harrington : ORDER entered. PROCEDURAL ORDER re pretrial: Final Pretrial Conference set for 9/13/2006 11:00 AM in Courtroom 13 before Senior Judge Edward F. Harrington. SO ORDERED. cc/cl(Holahan, Sandra) (Entered: 02/01/2006) |
| 02/01/2006 | 6 | AMENDED COMPLAINT against HDP, Inc., filed by Access With Success, Inc.. (Guerrera, Nicholas) (Entered: 02/01/2006) |
| 04/04/2006 | 8 | Assented to MOTION for Leave to File *Answer Late* by HDP, Inc.. (Attachments: # 1 Exhibit A to Motion for Leave to File Answer Late)(McMenimen, Brian) (Entered: 04/04/2006) |
| 04/05/2006 | | Judge Edward F. Harrington : Electronic ORDER entered granting 8 Motion for Leave to File. MOTION ALLOWED. cc/cl (Holahan, Sandra) (Entered: 04/06/2006) |
| 04/07/2006 | 9 | ANSWER to Complaint with Jury Demand by HDP, Inc..(McMenimen, Brian) (Entered: 04/07/2006) |
| 04/14/2006 | 10 | CERTIFICATE OF CONSULTATION *Pursuant to Local Rule 16.1(D)(3)* by Nicholas S. Guerrera on behalf of all plaintiffs. (Guerrera, Nicholas) (Entered: 04/14/2006) |
| 08/30/2006 | 11 | Judge Edward F. Harrington : AMENDED FINAL PRETRIAL CONFERENCE ORDER entered. Final Pretrial to be held on Tuesday, October 24, 2006 at 11:00 a.m. (Folan, Karen) (Entered: 08/30/2006) |

| | | |
|---|---|---|
| 10/24/2006 | | ElectronicClerk's Notes for proceedings held before Judge Edward F. Harrington : Final Pretrial Conference held on 10/24/2006. Colloquy re: status of case. Bench Trial estimated to last 2-3 days. Discussions regarding settlement. EFH will give a trial date in March. Parties to sit down and try to compromise on some issues. (Court Reporter Patrisso.) (Folan, Karen) (Entered: 10/24/2006) |
| 10/24/2006 | 12 | PRETRIAL MEMORANDUM by Access With Success, Inc.. (Guerrera, Nicholas) (Entered: 10/24/2006) |
| 10/24/2006 | 13 | Judge Edward F. Harrington : ORDER entered. Bench trial set for 4/9/07 at 9:00 a.m. (Folan, Karen) (Entered: 10/24/2006) |
| 12/20/2006 | 14 | MOTION to Compel by HDP, Inc.. (Attachments: # 1 Exhibit Copies of deposition notices)(McMenimen, Brian) (Entered: 12/20/2006) |
| 12/20/2006 | 15 | MEMORANDUM in Support re 14 MOTION to Compel filed by HDP, Inc.. (McMenimen, Brian) (Entered: 12/20/2006) |
| 01/08/2007 | | Judge Edward F. Harrington : Electronic ORDER entered granting 14 Motion to Compel. "Motion allowed. Failure to appear shall result in dismissal of case. So ordered." (Folan, Karen) (Entered: 01/08/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/16/2007 12:42:46 | | |
| **PACER Login:** | bm0714 | **Client Code:** | 400806-002 |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cv-10385-EFH |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER A. SPALLUTO and )<br>ACCESS WITH SUCCESS, INC. )<br>      Plaintiff, )<br>         )<br>v.       )<br>         )<br>HDP, INC.,   )<br>      Defendant. )  | CIVIL ACTION NO.: 05-cv-10385EFH |

## RE-NOTICE OF TAKING DEPOSITION

To:    Nicholas S. Guerrera
        Shaheen, Guerrera & O'Leary, LLC
        Jefferson Office Park
        820A Turnpike Street
        North Andover, MA 01845

      Please take notice that at 12:00 p.m. on Tuesday, January 23, 2007 at the offices of Adler Pollock & Sheehan, P.C., 175 Federal Street, Boston, Massachusetts, the defendant in this action, by its attorney will take the deposition upon oral examination of Peter Spalluto pursuant to the Federal Rules of Civil Procedure, before Mahaney Reporting Services, Notary Public in and for the Commonwealth of Massachusetts, or before some other officer authorized by law to administer oaths.

      You are invited to attend and cross-examine.

                 Respectfully submitted,
                 DEFENDANT, HDP, INC.
                 By its attorney,

                 Brian McMenimen, BBO # 338840
                 ADLER POLLOCK & SHEEHAN, P.C.
                 175 Federal Street
                 Boston, MA 02110
                 (617) 482-0600 Telephone
                 (617) 482-0604 Facsimile

Dated: January 9, 2007

*404464_1*

**NITED STATES DISTRICT COUR.**
**DISTRICT OF MASSACHUSETTS**

PETER A. SPALLUTO and    )
ACCESS WITH SUCCESS, INC. )
      Plaintiff,      )     CIVIL ACTION NO.: 05-cv-10385EFH
                 )
v.                  )
                 )
HDP, INC.,           )
      Defendant.    )

## RE-NOTICE OF TAKING 30(b)(6) DEPOSITION

To:   Nicholas S. Guerrera
     Shaheen, Guerrera & O'Leary, LLC
     Jefferson Office Park
     820A Turnpike Street
     North Andover, MA  01845

      Please take notice that at 10:00 a.m. on Tuesday, January 23, 2007 at the offices of Adler Pollock & Sheehan, P.C., 175 Federal Street, Boston, Massachusetts, the defendant in this action, by its attorney will take the deposition upon oral examination of Access With Success, Inc. pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, before Mahaney Reporting Services, Notary Public in and for the Commonwealth of Massachusetts, or before some other officer authorized by law to administer oaths. The defendants requests that Access With Success, Inc. designate one or more officers, directors, managing agents, or other persons who consent to being designated to testify pursuant to Fed. R. Civ. P. 30(b)(6) on the matters described in Schedule A.

      You are invited to attend and cross-examine.

                    Respectfully submitted,
                    DEFENDANT, HDP, INC.
                    By its attorney,

                    Brian McMenimen, BBO # 338840
                    ADLER POLLOCK & SHEEHAN, P.C.
                    175 Federal Street
                    Boston, MA 02110
                    (617) 482-0600 Telephone
                    (617) 482-0604 Facsimile

Dated: January 9, 2007

*404466_1*

Schedule A

1.  Every matter and assertion alleged in the plaintiffs' complaint, including the factual basis for the assertion appearing in paragraph 24 that HDP, Inc. has made renovations to the premises since January 26, 1992.

2.  The identity of persons who have personal knowledge of the matters alleged in the complaint.

3.  the activities of the plaintiff with respect to other claims made or actions commenced by it under the Americans with Disabilities Act.

1            VOL. I
             PAGES 1-5
2            EXHIBITS 1-2

3

4      UNITED STATES DISTRICT COURT
       DISTRICT OF MASSACHUSETTS
5

6

7 PETER A. SPALLUTO and    )
 ACCESS WITH SUCCESS, INC.,  )
8             )
       Plaintiffs,  )
9             ) CIVIL ACTION NO.
     vs       ) 05-cv-10385EFH
10            )
 HDP, INC.,       )
11            )
       Defendant.  )
12

13

14

15

16       SCHEDULED DEPOSITION OF PETER A.

17 SPALLUTO, taken on behalf of the defendant, pursuant to

18 the applicable provisions of the Federal Rules of Civil

19 Procedure, before Kimberly A. McGonagle, Registered

20 Professional Reporter, CSR No. 110393, Notary Public in

21 and for the Commonwealth of Massachusetts, at the offices

22 of Shaheen, Guerrera & O'Leary, LLC, 820A Turnpike

23 Street, North Andover, Massachusetts, on Wednesday,

24 January 24, 2007, commencing at 11:39 a.m.

```
 1   APPEARANCES:

 2
             SHAHEEN, GUERRERA & O'LEARY, LLC
 3           (by Nicholas S. Guerrera, Esq.)
             Jefferson Office Park
 4           820A Turnpike Street
             North Andover, Massachusetts 01845
 5           for the plaintiffs.

 6
             ADLER POLLOCK & SHEEHAN, P.C.
 7           (by Brian J. McMenimen, Esq.)
             175 Federal Street
 8           Boston, Massachusetts 02110-2210
             for the defendant.

 9


10   ALSO PRESENT:  Dino N. Theodore

11

12

13                     I N D E X

14

15   Scheduled Deposition of:                    Page

16
     PETER A. SPALLUTO                              3
17

18

19
     Exhibits                                     Page
20

21    No. 1 Re-Notice of Taking Deposition          3

22    No. 2 Letter dated 1/18/2007                  3

23

24
```

1          MR. McMENIMEN:  I'm ready to go

2    forward with calling the second deposition that's been

3    noticed for today and that would be the notice of the

4    deposition of Peter Spalluto.  And for that deposition I

5    would mark the notice of -- the deposition notice.

6    You've got a copy of it.

7          MR. GUERRERA:  Yes.

8

9    (Exhibit No. 1 Re-Notice of Taking Deposition marked)

10

11   (Exhibit No. 2 Letter dated 1/18/2007 marked)

12

13          (Discussion off the record)

14          MR. McMENIMEN:  The second

15   document that I would request be marked is another copy

16   of my letter of January 18 referencing that the

17   deposition, which is noticed for the 23rd, was moved by

18   agreement to the 24th.  And the place of the deposition

19   was changed from my office in Boston to plaintiff's

20   counsel's office in North Andover.

21          It's also my understanding from

22   communications that I've had with counsel that Mr.

23   Spalluto will not be present to attend the deposition

24   that's been called.

4

```
 1                    MR. GUERRERA:  Mr. Spalluto lives
 2   in Florida.  He's quadriplegic.  He's been quadriplegic
 3   since 1966.  He is at risk of bronchial infections in
 4   cold climates and he can't come to Massachusetts in the
 5   wintertime.
 6                    I've offered to go to Florida to
 7   take his deposition, at each party's expense.  I've
 8   offered to make arrangements to do the deposition via
 9   video teleconference or by telephone and then also to
10   wait until the springtime when the weather is warmer and
11   Mr. Spalluto can come to Massachusetts.  Any of those
12   would be alternatives, but a deposition in Massachusetts
13   in late January is not because of health reasons.  That's
14   all I have.
15                    MR. McMENIMEN:  Thank you.
16                    (Whereupon, the scheduled
17                    deposition was adjourned at
18                    11:42 a.m.)
19
20
21
22
23
24
```

5

<pre>
 1                    CERTIFICATE

 2

 3   Commonwealth of Massachusetts
     Middlesex, ss.
 4

 5

 6                    I, Kimberly A. McGonagle, a Notary

 7   Public and Registered Professional Reporter, do hereby

 8   certify that the foregoing record, pages 1 through 5

 9   inclusive, is a complete, accurate, and true

10   transcription of my stenographic notes taken in the

11   aforementioned matter to the best of my skills and

12   ability.

13

14

15

16

17   _____

18   Kimberly A. McGonagle
     RPR, Notary Public
19   CSR No. 110393

20

21   My commission expires
     on May 3, 2013
22

23

24
</pre>

MAHANEY REPORTING SERVICES
Tel. (617) 542-4207

VOL. I
PAGES 1-74
EXHIBITS 1-3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER A. SPALLUTO and          )
ACCESS WITH SUCCESS, INC.,     )
                               )
                Plaintiffs,    )
                               )  CIVIL ACTION NO.
        vs                     )  05-cv-10385EFH
                               )
HDP, INC.,                     )
                               )
                Defendant.     )

30(b)(6) DEPOSITION OF ACCESS WITH
SUCCESS, INC., by its designee, DINO N. THEODORE, taken
on behalf of the defendant, pursuant to the applicable
provisions of the Federal Rules of Civil Procedure,
before Kimberly A. McGonagle, Registered Professional
Reporter, CSR No. 110393, Notary Public in and for the
Commonwealth of Massachusetts, at the offices of Shaheen,
Guerrera & O'Leary, LLC, 820A Turnpike Street, North
Andover, Massachusetts, on Wednesday, January 24, 2007,
commencing at 10:12 a.m.

---

## Page 2

APPEARANCES:

SHAHEEN, GUERRERA & O'LEARY, LLC
(by Nicholas S. Guerrera, Esq.)
Jefferson Office Park
820A Turnpike Street
North Andover, Massachusetts 01845
for the plaintiffs.

ADLER POLLOCK & SHEEHAN, P.C.
(by Brian J. McMenimen, Esq.)
175 Federal Street
Boston, Massachusetts 02110-2210
for the defendant.

I N D E X

Deposition of:                          Page

DINO N. THEODORE

    Examination by Mr. McMenimen          3

Exhibits                                 Page

No. 1 Notice of Taking Deposition         3

No. 2 Letter dated 1/18/2007              3

No. 3 Amended Complaint and Jury Demand   34

---

## Page 3

1   (Exhibit No. 1 Notice of Taking Deposition marked)

2

3   (Exhibit No. 2 Letter dated 1/18/2007 marked)

4

5

6           DINO N. THEODORE, a witness called

7   on behalf of the defendant, first having been

8   satisfactorily identified and duly sworn by the Notary

9   Public, on oath deposes and says as follows:

10

11

12           MR. McMENIMEN: If I may, I'll put

13  on the record that all objections except objections as to

14  the form of questions are reserved until the time of

15  trial. All motions to strike are reserved until time of

16  trial. Reading and signing?

17           MR. GUERRERA: Thirty days.

18           MR. McMENIMEN: Sure.

19           MR. GUERRERA: Waive notary.

20           MR. McMENIMEN: Okay.

21

22

23  EXAMINATION BY MR. McMENIMEN:

24      Q.   Good morning, Mr. Theodore. I introduced myself

---

## Page 4

1   earlier but, for the record, my name is Brian McMenimen.

2   I'm a lawyer in Boston. I represent the defendant in

3   this action, HDP, Incorporated.

4           I'm going to ask you a series of

5   questions today. As I mentioned earlier, I don't

6   anticipate this will take a long time, but at any time

7   you want to take a break for any reason, just indicate

8   that you'd like to take a break and we will take a break

9   at that moment.

10           Have you ever been deposed before?

11      A.   Yes, I have.

12      Q.   Okay. So then you're familiar a little bit any

13  way with the process that we're going to go through?

14      A.   Yes, I am.

15      Q.   Okay. I'll state very briefly on the record

16  things that you probably know better than I do, but the

17  stenographer is going to be taking down what is said in

18  the room during the course of the deposition and it's

19  very difficult for her or anyone to take down what is

20  being said if two people are talking at the same time.

21           So I'm sure I'm going to ask you

22  questions that you will know the answer to before I

23  finish the question. I would only ask you in

24  consideration for our stenographer to not answer my

Spalluto/Access with Success vs. HDP, Deposition of Dino Theodore, 1/24/2007

Case 1:05-cv-10385-EFH    Document 17-7    Filed 03/22/2007    Page 2 of 17

**5**

1 question until I've completed it, and in return I promise
2 to do my level best not to interrupt you at any time when
3 you are speaking, how's that?
4    A.    Sounds good to me.
5    Q.    Okay. Secondly, as I'm sure you know, our
6 stenographer can only record what is said, she cannot
7 interpret gestures. So if an answer can be -- if an
8 answer calls for a yes or a no, you have to indicate with
9 a yes or a no or some such verbal response rather than a
10 shake of the head because, as I said, she can't -- she's
11 not allowed to interpret gestures.
12    A.    Okay.
13    Q.    Knowing myself as I do, I'm sure that I will ask
14 questions poorly from time to time, hopefully not all of
15 the time. But if I ask a question poorly and as a
16 consequence you don't understand it, just tell me and I
17 will rephrase it if you don't understand the question,
18 okay?
19    A.    Yes.
20    Q.    With that, if there are more rules we'll make
21 them up as we go along. Let me commence.
22            For the record, would you state
23 your name and your address.
24    A.    My name is Dino Nicholas Theodore. And my

**6**

1 address is 1305 Methuen Street, Dracut, Massachusetts,
2 zip 01826.
3    Q.    Mr. Theodore, this is the deposition of a
4 plaintiff in this action, the plaintiff being a
5 corporation called Access with Success, Incorporated.
6 Are you familiar with the corporation Access with
7 Success, Incorporated?
8    A.    Yes.
9    Q.    And have you been designated, for the record, as
10 the person who is to speak on behalf of Access with
11 Success, Incorporated, at this deposition?
12    A.    Yes.
13    Q.    I'm going to show you what I have already had
14 marked as Exhibit 1, which is a re-notice of the taking
15 of the 30(b)(6) deposition.
16            MR. McMENIMEN:  Off the record.
17            (Discussion off the record)
18    Q.    Have you had a chance to look at that document
19 now marked Exhibit 1?
20    A.    Yes.
21    Q.    And have you seen it before, Mr. Theodore, if
22 you recall?
23    A.    I don't recall seeing it, but I may have seen
24 something similar.

**7**

1    Q.    All right. And, for the record, I would also
2 offer a letter that accompanied that document when it was
3 forwarded to Mr. Guerrera only because the deposition
4 notice states it's for the 23rd of January and here we
5 are the 24th. And it also says the deposition is to take
6 place at my office in Boston when, in fact, we are doing
7 it at plaintiff's counsel's office in North Andover and
8 the letter kind of explains that. So I would offer that
9 for the record and you're welcome to look at it if you
10 want to, but I'm not going to ask you any questions about
11 it.
12            Have you had an opportunity to
13 either in the form in which it appears in Exhibit 1 or in
14 maybe standing by itself, have you had an opportunity to
15 look at the three enumerated items in Schedule A to the
16 deposition notice?
17    A.    Yes.
18    Q.    Okay. I'm going to ask you a series of
19 questions about them, but first just a little bit -- if I
20 could just find out a little bit about who is the
21 spokesperson for Access with Success. Are you employed,
22 Mr. Theodore?
23    A.    Yes, I am.
24    Q.    And what is your occupation?

**8**

1    A.    I'm an attorney.
2    Q.    And where do you practice?
3    A.    I practice in Massachusetts.
4    Q.    Okay. How long have you been a member of the
5 bar?
6    A.    I've been a member of the bar since 1994.
7    Q.    Okay. On the record, pardon my ignorance for
8 giving you instructions on how to conduct a deposition.
9 I didn't know that you were an attorney so --
10    A.    That's quite all right.
11    Q.    -- I apologize if I was pedantic.
12    A.    No, there's always room to learn more.
13    Q.    Boy, do I know that.
14            Tell me, for the record, what your
15 understanding is of the nature of the business of Access
16 with Success, Incorporated.
17    A.    They're a nonprofit corporation and their
18 business consists of giving people with -- that are
19 members of this protected class under the ADA of disabled
20 individuals an opportunity to have access to places that
21 they normally wouldn't as a result of their disability.
22 And it also is helpful in allowing families and friends
23 of those individuals and quite possibly society as a
24 whole to benefit from the accessibility of certain places

**9**

1   which they may not normally be able to access.
2       Q.  Are you yourself a member of Access with
3   Success, Incorporated, in any way? That is -- let me try
4   to refine that a little bit. Are you an officer of the
5   corporation?
6       A.  No, I'm not an officer.
7       Q.  Were you involved in the creation of Access with
8   Success, Incorporated?
9       A.  No, I was not.
10      Q.  All right. Does the corporation have members --
11  a membership?
12      A.  Yes, they do.
13      Q.  How does one become a member of Access with
14  Success, if you know?
15      A.  I don't know how, but I know it's not a very
16  difficult thing to do and I know that one does not have
17  to be disabled to be a member.
18      Q.  Do you know who the officers -- at present who
19  the officers of the corporation are or trustees? I'm not
20  sure which.
21      A.  I do know who some of the officers are. I don't
22  know who all of the officers are.
23      Q.  Would you tell me who the persons are that you
24  do know?

**10**

1       A.  I know Scott Frotton is an officer of the
2   corporation, as well as Tammy Frotton. And that's about
3   as far as I could go with certainty, specific certainty.
4       Q.  Do you know what offices they hold in the -- in
5   Access with Success?
6       A.  I don't know exactly, but I'm under information
7   and belief I do believe that Scott Frotton is the
8   president.
9       Q.  Do you know when Access with Success,
10  Incorporated, was first formed as a Massachusetts
11  corporation?
12      A.  No, I do not know the exact date.
13      Q.  Do you know approximately when? What year, for
14  example?
15      A.  I don't know the exact year either, no. I know
16  it is more than seven years, I can tell you that.
17      Q.  Okay. How long have you been a member of Access
18  with Success?
19      A.  I've been a member since 2004.
20      Q.  Okay. I don't mean to repeat myself but is
21  there -- do you know if there is any kind of a membership
22  fee or annual assessment that is solicited or required by
23  Access with Success?
24      A.  There is no fee that I'm aware of.

**11**

1       Q.  Do you know if there are any particular
2   necessary qualifications that an individual would have to
3   have in order to become a member of Access with Success?
4       Now, I understand from an earlier
5   answer you don't need to be suffering from a disability.
6       A.  That's correct.
7       Q.  But are there any limitations on the membership
8   of Access with Success?
9       A.  I don't believe there are --
10      Q.  Okay.
11      A.  -- but I may be wrong.
12      Q.  Would you know who would know the answer to that
13  question?
14      A.  I would not know who would know.
15      Q.  Okay. It prompts me to ask the question of --
16  and to the extent it involves a communication between you
17  and Mr. Guerrera or an attorney in his office, obviously
18  I don't want to know, but can you tell me the means by
19  which you were designated to be the spokesperson for
20  Access with Success, Incorporated?
21      A.  That involved a communication I had with
22  counsel.
23      Q.  Okay. Did you have a communication with anybody
24  other than counsel to Access with Success, Incorporated,

**12**

1   regarding your being the spokesperson?
2       A.  No, I did not.
3       Q.  Okay. Have you performed any services for
4   Access with Success, Incorporated, as an attorney? And
5   if you have I don't want to get into attorney --
6   privileged materials, just the answer would suffice. I'm
7   not going to get into details with you.
8       A.  Well, when you say as an attorney, could you be
9   more specific as far as representation do you mean or --
10      Q.  Have you rendered legal advice or have you
11  rendered legal services to Access with Success,
12  Incorporated?
13      A.  I've had discussions with counsel and I think
14  those discussions would probably fall into that category.
15      Q.  Let's leave it at that.
16      A.  Yes.
17      Q.  Are you aware of whether or not Access with
18  Success is a party to any other litigation besides the
19  litigation that brings us together?
20      A.  Yes, I am.
21      Q.  Tell me about that. What other litigation is
22  Access with Success a party to?
23      A.  I know of at least four other cases in which
24  Access With Success is a party.

Spalluto/Access with Success vs. HDP, Deposition of Dino Theodore, 1/24/2007

Case 1:05-cv-10385-EFH    Document 17-7    Filed 03/22/2007    Page 4 of 17

13

| | |
|---|---|
| 1 | **Q.** Are they pending cases at present, if you know? |
| 2 | **A.** Yes, they are. |
| 3 | **Q.** Okay. Could you tell me where the cases are |
| 4 | pending? |
| 5 | **A.** They are pending in federal court. |
| 6 | **Q.** Do you know what federal court they're pending |
| 7 | in? |
| 8 | **A.** Some are pending in the Massachusetts district |
| 9 | and others are pending in the New Hampshire district. |
| 10 | **Q.** Okay. Do you know the names of the defendants |
| 11 | in the four cases that you're aware of? |
| 12 | **A.** I may know the names of at least a couple. |
| 13 | **Q.** Would you let me know -- I mean would you tell |
| 14 | me what they are? |
| 15 | **A.** Sure. One of the defendants is Club Casino, |
| 16 | another defendant is Hooters. A third defendant is -- I |
| 17 | don't recall the other two, but I know there are two |
| 18 | others. |
| 19 | **Q.** Do you have any function as an attorney -- let |
| 20 | me strike the question and ask it a simple way. Do you |
| 21 | represent Access with Success in any of those pending |
| 22 | actions? |
| 23 | **A.** No, I don't. |
| 24 | **Q.** In addition to the four pending cases or five |

14

| | |
|---|---|
| 1 | with this one, that is Spalluto and Access with Success |
| 2 | versus HDP, Inc., do you know whether Access with Success |
| 3 | has brought other lawsuits in the past? |
| 4 | **A.** Yes, I know they have. |
| 5 | **Q.** And about how many are you aware of that they |
| 6 | have brought in the past? |
| 7 | **A.** I'm only aware of one or two. |
| 8 | **Q.** Do you know where those cases were brought, the |
| 9 | venue of those cases? |
| 10 | **A.** I believe they were brought in the Massachusetts |
| 11 | federal district as well, federal court. |
| 12 | **Q.** Okay. And those cases, as far as you know the |
| 13 | ones that you recall, are disposed of now? |
| 14 | **A.** I believe -- I believe one may be. I'm not |
| 15 | quite sure of the, you know, the position of those cases. |
| 16 | **Q.** Okay. But so we're -- you can think of two |
| 17 | cases, two prior cases that your memory is -- your best |
| 18 | memory is they are disposed of at the present time? |
| 19 | **A.** No. There are cases -- could you ask the |
| 20 | question again. |
| 21 | **Q.** I took us down that -- |
| 22 | **A.** Kind of -- |
| 23 | **Q.** I was focusing on -- let me back up so that I |
| 24 | can put my question in a clearer context. |

15

| | |
|---|---|
| 1 | We had talked a few moments ago |
| 2 | about pending cases in which Access with Success is a |
| 3 | party. And you mentioned you could think of four and |
| 4 | named the defendants in two. Then I asked you, if I |
| 5 | recall correctly, about other cases that are now disposed |
| 6 | of where Access with Success was a party. And I think |
| 7 | you said that you can recall two -- |
| 8 | **A.** Uhm-uhm. |
| 9 | **Q.** -- that you thought they were both brought in |
| 10 | the federal court in Boston and that you thought one of |
| 11 | them was disposed of and perhaps you're not too sure on |
| 12 | the other one. |
| 13 | **A.** That's correct. |
| 14 | **Q.** Does that comport with your recollection of what |
| 15 | we've just talked about? |
| 16 | **A.** Yes, thank you. |
| 17 | **Q.** Can you identify those two cases for me? |
| 18 | **A.** That were disposed of? |
| 19 | **Q.** Yes. |
| 20 | **A.** One of the cases that was disposed of involved |
| 21 | Market Basket, a supermarket chain. The other one that |
| 22 | was disposed of I do not know -- I think it may have been |
| 23 | disposed of due to bankruptcy proceedings and I think |
| 24 | that was a Hooters case. And I'm not sure if it's been |

16

| | |
|---|---|
| 1 | disposed of or it's still pending. |
| 2 | **Q.** Have there been more than one Hooters case? |
| 3 | **A.** Yes, there have been. |
| 4 | **Q.** Okay. So the Hooters case that you said was |
| 5 | pending now is different from the one that you were just |
| 6 | telling me that might have been disposed of through |
| 7 | bankruptcy? |
| 8 | **A.** There were actually two Hooters cases and to the |
| 9 | best of my knowledge I believe they both have been in |
| 10 | some way, shape, or form disposed of due to bankruptcy. |
| 11 | **Q.** Okay. Including this case, that is with the |
| 12 | defendant HDP, Incorporated, we've talked about perhaps |
| 13 | seven cases in which Access with Success, Incorporated, |
| 14 | was a party. Four in addition to HDP that may be pending |
| 15 | now and two others you can recall that may be disposed |
| 16 | of. |
| 17 | To the best of your recollection, |
| 18 | are those all of the cases in which Access with Success, |
| 19 | Incorporated, has appeared as a party? |
| 20 | **A.** I don't believe they are. |
| 21 | **Q.** You think there are others? |
| 22 | **A.** Yes. |
| 23 | **Q.** Okay. With regard to Access with Success, |
| 24 | Incorporated, can you tell me if there are other |

17

```
 1   corporations organized in other states called Access with
 2   Success, Incorporated?
 3      A.   I don't know that there are any other
 4   corporations with that name.
 5      Q.   Is it there might be and you don't know or you
 6   don't believe that there are?
 7      A.   It is there might be and I don't know.
 8      Q.   Okay.  Does the membership of Access with
 9   Success have like membership meetings or some sorts of
10   functions where members get together to discuss issues
11   important, if you will, to Access with Success?
12      A.   I don't know that there are, but I do know that
13   a lot of members are spread out throughout the country
14   and, therefore, a lot of communication is done via the
15   Internet.
16      Q.   Okay.  And is that where -- does Access with
17   Success, Incorporated, have a website?
18      A.   I believe they do.  I'm not 100 percent sure,
19   but I believe they do.
20      Q.   Have you ever -- do you have a recollection of
21   ever communicating with other persons who are members of
22   Access with Success through some common website?
23      A.   Not through a website.
24      Q.   Okay.  Just through e-mail?
```

18

```
 1      A.   Through e-mail I've had -- I've seen
 2   transmissions in which I've been involved in.
 3      Q.   Does Access with Success conduct any sorts of
 4   programs such as educational programs or instructional
 5   programs either for its members with disabilities or
 6   members without disabilities or for establishments or
 7   businesses that maybe fall under the jurisdiction of the
 8   Americans with Disabilities Act?
 9      A.   I don't know.
10      Q.   Okay.  Safe to say that you've never
11   participated in any sort of informational or educational
12   program on behalf of Access with Success; is that right?
13      A.   Well, it depends on what you mean by an
14   educational program.  Discussions with, you know,
15   individuals involved in the community as far as, you
16   know, accessibility issues, is that -- would you consider
17   that a discussion as far as, you know, a teaching
18   discussion?
19      Q.   Well, let's talk about that.  Have you had
20   occasions when you've discussed accessibility issues with
21   people in the community at large or people representing
22   businesses in the community?
23      A.   Yes.
24      Q.   So that I'm clear, is that something you have
```

19

```
 1   done as a representative of Access with Success,
 2   Incorporated, or is it something you have done on your
 3   own?
 4      A.   Both.
 5      Q.   Okay.  Is there a process whereby Access with
 6   Success would designate you to speak on its behalf, other
 7   than at this deposition, in the past?
 8      A.   There hasn't been a situation when that has
 9   happened.
10      Q.   All right.  Does Access with Success,
11   Incorporated, advertise to solicit membership?
12      A.   I don't know.
13      Q.   Do you know who might know the answer to that
14   question?
15      A.   Perhaps the president, but I can't be 100
16   percent sure of that.
17      Q.   Okay.  The president would be Mr. Totten I think
18   you said?
19      A.   Mr. Frotton and I'm not --
20      Q.   Frotton.
21      A.   -- 100 percent sure that he is the president,
22   but I know he's a founding father.
23      Q.   Okay.  Do you know where Mr. Frotton resides?
24      A.   I don't know his current address.
```

20

```
 1      Q.   Okay.  Would you be able to find out where he
 2   resides?
 3      A.   Yes.
 4           MR. McMENIMEN:  Okay.  If I may,
 5   Nick, if I need to pursue the answers to some questions
 6   pursuant to this deposition notice would you be able to
 7   get the address of a person --
 8           MR. GUERRERA:  78 Donohue Road.
 9           MR. McMENIMEN:  I beg your pardon?
10           MR. GUERRERA:  78 Donohue Road.
11   It's in the complaint, isn't it?
12           MR. McMENIMEN:  I don't think it
13   is but --
14           MR. GUERRERA:  It's 78 Donohue
15   Road, Dracut.
16      Q.   Okay.  You mentioned that Mr. Frotton was a
17   founding member.  Do you know who the founding members in
18   addition to Mr. Frotton, if any, there were?
19      A.   I think his wife Tammy or I don't know if it's
20   his wife or not, but I know there's a name Tammy Frotton
21   was also involved in the development.
22      Q.   When you mentioned a few moments ago that you
23   have spoken to persons in the community sometimes as an
24   individual about -- and I'm limiting this to issues
```

21

1  regarding, if I can put it under a broad umbrella,
2  disabilities and accessibility -- you've done it both
3  individually and on occasion as a spokesperson for Access
4  with Success, Inc., did I boil your answer down
5  accurately there?
6      A.   I don't think we had boiled it down as a
7  spokesperson.  I think it was more in a capacity
8  associated in some way with Access.  It was not as a
9  spokesperson, but it was in a forum that was related to
10  something that concerned Access with Success.
11      Q.   Could you tell me what forum you're referring to
12  or what that particular incident that you're describing?
13      A.   It actually involved another piece of litigation
14  that was filed.
15      Q.   And what piece of litigation was that?
16      A.   There was an investigation that was conducted at
17  a site where allegations of discrimination and a
18  complaint was filed, and there were discussions with
19  hotel management personnel.  It happened to be a hotel.
20  And it was a case in which Access was involved.
21      Q.   Did litigation ensue?  When you say a complaint
22  was filed, it could be a complaint before a body
23  different from a court.  And I haven't asked you about
24  that yet, but was a complaint filed in a court arising

22

1  out of that incident that you've just described?
2      A.   Not arising out of it.  There had already been a
3  complaint filed.
4      Q.   Well, what was the case?
5      A.   It was a case against a hotel for issues of
6  discrimination.
7      Q.   What's the name of the hotel?
8      A.   The hotel was the Double Tree -- Double Tree
9  Hotel.
10      Q.   And do you know the names of the parties to that
11  and what court it was --
12      A.   Access with Success was a party, as well as
13  myself, and the defendant was Double Tree Hotels.
14      Q.   And where was that case filed?
15      A.   In the federal district court in Massachusetts.
16      Q.   Is that pending?
17      A.   Yes, it is.
18      Q.   Okay.  So that's one of the other cases that is
19  pending in federal court in addition to Hooters and
20  Colony --
21      A.   Casino.  That actually is a third, you're
22  correct.  You've refreshed my recollection, Counsel.
23      Q.   Okay.  Are you a party in any other litigation
24  besides that case that you've just described?

23

1      A.   Yes, I am.
2      Q.   Okay.  Tell me what cases you are a party in.
3      A.   Myself or in conjunction with Access with
4  Success?  I'm not really sure how you --
5      Q.   Well, let's do both.  Let's start with you
6  individually and then you in addition -- in conjunction
7  with Access with Success.
8      A.   Now, when you say a party individually, do you
9  mean a plaintiff, defendant, or could you narrow it down
10  a little bit more for me?  Because I'm an attorney and I
11  have cases that I'm involved in.  When you say party --
12      Q.   Yes.  I'm not asking you to identify clients of
13  yours as an attorney.  I'm asking you about cases in
14  which you are a named party in an action pending in a
15  court somewhere.
16      A.   Okay.  And the question is how many cases?
17      Q.   Yes.
18      A.   I'm going to guess and say five.
19      Q.   And are you a plaintiff in each of those
20  actions?
21      A.   Yes.
22      Q.   Are they against places of public accommodation?
23      A.   Yes, they are.
24      Q.   And where are those cases pending?

24

1      A.   There are some pending in the Massachusetts
2  District Federal Court and there is one pending in New
3  Hampshire Federal District Court, and there is one
4  pending at the Mass. Commission Against Discrimination.
5      Q.   And that was pending at the MCAD, if you will,
6  has not yet resulted in the filing of formal litigation
7  in court?
8      A.   Well, it depends on how you define a court.  The
9  MCAD is an administrative body which is akin to a court
10  judicial system so I would have to say yes, it's a court.
11      Q.   All right.  And as to those five cases that you
12  think that you are a party -- a plaintiff in, how many of
13  them are Access with Success also plaintiffs in?
14      A.   All but one.
15      Q.   Okay.  And which is the one that Access with
16  Success is not a plaintiff in?
17      A.   The MCAD case.
18      Q.   Okay.  So as to the -- there are four cases that
19  you can recall, one in New Hampshire and three in Mass.,
20  where the plaintiffs are Dino Theodore and Access with
21  Success, Inc.; am I right?
22      A.   Yes.
23      Q.   And are those different from the four cases that
24  we talked about at the beginning of this deposition that

**25**

1  are pending in addition to the present case?

2      A.  Are they different?

3      Q.  Are they different cases.

4      A.  They are the same cases that we had spoken about

5  that I had recollection of.

6      Q.  Okay.  So the pending Hooters case, for

7  example --

8      A.  Uhm-uhm.

9      Q.  -- it's Dino Theodore and Access with Success

10  versus Hooters, Incorporated, is that --

11      A.  One of them.  There was two -- actually two

12  Hooters cases.

13      Q.  Were you a party to both of those cases?

14      A.  No, I was not.

15      Q.  Access with Success was a party to both of those

16  cases, I take it?

17      A.  I'm really not sure.

18      Q.  Okay.  With respect to the Casino -- I can't

19  think of the full title that you --

20              MR. GUERRERA:  Hampton Beach

21  Casino.

22      Q.  It's the Hampton Beach Casino, that is Dino

23  Theodore and Access with Success versus the Hampton Beach

24  Casino or whatever its corporate name is?

**26**

1      A.  Correct.

2      Q.  Is that pending in New Hampshire Federal Court?

3      A.  Yes.

4      Q.  There is the -- well, in addition to cases in

5  which you are an individual defendant and Access with

6  Success is a corporate defendant, are you aware of any

7  other cases in which Access with Success is a plaintiff,

8  that is with other individuals?

9      A.  I think the terminology you used was defendant.

10      Q.  I meant plaintiff, excuse me.

11      A.  I'm sorry, could you give me the second part of

12  the question again now?

13      Q.  Are you aware of any other cases pending

14  anywhere, MCAD or court, where Access with Success is a

15  party independent of you?

16      A.  Other than this case?

17      Q.  Other than this case.

18      A.  No.

19      Q.  Okay.

20      A.  I'm not aware of any.

21      Q.  Okay.  Access with Success, I take it one of its

22  functions is to bring actions, legal actions, either

23  before the Mass. Commission Against Discrimination or

24  pending in court on behalf of persons with disabilities;

**27**

1  is that an accurate statement?

2      A.  I don't know if it's one of their functions.

3      Q.  Well, they've done it some seven or eight times

4  that you're aware of, right?

5      A.  Yes.

6      Q.  And they may have done it other times that

7  you're not aware of?

8      A.  Right.

9      Q.  Is it a purpose of Access with Success,

10  Incorporated, to bring actions on behalf of persons with

11  disabilities or maybe a better way to put it is to bring

12  actions involving accessibility barriers in places of

13  public accommodation?

14      A.  I don't know that's its purpose, but it

15  certainly is an avenue for getting something done with

16  respect to accessibility issues.

17      Q.  Okay.

18      A.  But as far as it being a purpose, I can't answer

19  yes with respect to that question.

20      Q.  Okay.  In addition to being a party in the

21  actions that you've described and perhaps other actions

22  that you're not aware of, can you tell me what else

23  Access with Success, Incorporated, does?

24      A.  Well, it's an organization that is nonprofit

**28**

1  that -- of people with a wide range of disabilities and

2  it gives these people an opportunity to voice themselves

3  with respect to problems they may be having in society.

4  So that would be a purpose other than litigation.

5      Q.  Does it offer any services other than providing

6  a forum to discuss disability issues?

7      A.  I don't know.

8      Q.  And who would know?  Again, would that be Mr.

9  Frotton, as far as you know?

10      A.  I suppose Mr. Frotton might know, but as far as

11  services it's -- you know, I don't know who would know

12  what other, you know, things that may have.

13      Q.  Well, you'll agree with me someone must know

14  because it's an entity, it's a corporate person.  It's

15  safe to say -- I think what you're saying, so tell me if

16  I'm correct, is that you yourself don't know, but there's

17  probably somebody else out there that would know; is that

18  a fair statement?

19      A.  I don't know what there are for services that

20  someone would know about.  You know, the term services --

21  you know, it's a group of individuals and I don't know

22  that there are certain services that one person provides

23  to another.

24              I think it's more of just a

Spalluto/Access with Success vs. HDP, Deposition of Dino Theodore, 1/24/2007

Case 1:05-cv-10385-LTT    Document 17-7    Filed 03/22/2007    Page 8 of 17

29

1 collaboration. It's a group of different individuals
2 with different problems and, you know, the service
3 that -- I don't think there's any one person in that
4 group that provides any more of a service to another.
5     Q. Other than communicating -- communication with
6 one another?
7     A. Discussions, you know, and there may be certain
8 lawsuits that we've discussed, that may be a topic for
9 individuals, and there may be the ability to file an
10 action in the event that, you know, something occurs
11 that's contrary to the ADA.
12     Q. Are there currently actions being contemplated
13 on behalf of individuals by Access with Success,
14 Incorporated?
15     A. I don't know the answer to that.
16     Q. Do you participate in those kinds of discussions
17 as a member of Access with Success, Incorporated?
18     A. No, I don't.
19     Q. Okay. Does Access with Success, does it have
20 formal discussion-type events? That is does it hold --
21 I'll give you a simple example. Does it hold things like
22 a convention where they rent a space and invite people to
23 come and attend and --
24     A. I haven't heard of any such event being noticed.

30

1     Q. I don't mean this to in any way trivialize
2 Access with Success, but do they, you know, sell things
3 like an Access with Success T-shirt or --
4     A. I don't know.
5     Q. Okay.
6     A. I've never seen one.
7     Q. Do you know what the source of income --
8 operating income for Access with Success is?
9     A. I don't know that there is any.
10     Q. Do you know if it has any salaried employees?
11     A. I don't believe it does.
12     Q. Does it have an office?
13     A. I assume it does.
14     Q. Where would that office be?
15     A. There's an address in Dracut, Massachusetts that
16 I heard counsel mention previously, and I'll assume that
17 that's the address of their -- their office, if there is
18 one.
19     Q. That would be Mr. Frotton's --
20     A. Yes.
21     Q. -- home or his address?
22     A. Uhm-uhm.
23     Q. Have you read the complaint, the amended
24 complaint and jury demand, in this action, Mr. Theodore?

31

1     A. Yes, I have.
2     Q. Let me ask you one of those lawyer questions. Have
3 you reviewed any documents prior to coming here today to
4 testify on behalf of Access with Success?
5     A. I reviewed the complaint briefly, took a look at
6 it, and I don't know that it was in anticipation of this
7 event. I think I may have just looked at it in looking
8 at other complaints as well. And I've looked at some
9 other papers, too.
10     Q. What other papers have you looked at?
11     A. I looked at actually a ruling from a federal
12 court judge on a motion, and I don't know the particulars
13 to it, but I just read pretty much the law and the ruling
14 per se.
15     Q. Is this a published opinion?
16     A. I don't know that it's published or not.
17     Q. Do you know the name of the case in which the
18 ruling was?
19     A. I believe Mr. Spalluto was a party to the action
20 but I don't know -- I don't know the name of the case,
21 sorry.
22     Q. Do you know the court in which the case was
23 pending?
24     A. It was a federal court.

32

1     Q. Was it in Massachusetts?
2     A. Yes.
3     Q. All right. And you don't know the name of the
4 defendant in that action?
5     A. No, I didn't catch the defendant's name, I'm
6 sorry.
7     Q. Do you happen to know the name of the judge who
8 wrote the -- issued the ruling?
9     A. No, I don't, I'm sorry.
10     Q. Okay. In addition to that document and the
11 complaint, what other documents have you reviewed prior
12 to -- in preparation for testifying here today?
13     A. I can't name any specifically.
14     Q. An answer like that suggests to me that I should
15 ask you, could you think of any generally, like
16 categories of documents that you looked at?
17     A. Aside from the two that I mentioned, I looked at
18 a list of certain individuals that are our members. And
19 I didn't take much of a look at it, just kind of breezed
20 through it.
21     Q. How many members does Access with Success,
22 Incorporated, have?
23     A. I'm going to have to guess and I hate to.
24     Q. I don't want you to guess, but your best

33

1  understanding will do.

2    A.    My best estimate will be between 15 and 25.

3    Q.    Okay.  And I think I asked you this and if I

4  did, forgive me, but there are no annual dues or --

5    A.    There are no dues to be a member, I'm sure of

6  that.

7    Q.    Okay.  One other thing -- I don't like to bounce

8  around, but does Access with Success, does it have any

9  sort of an advocacy function?  And what I mean by that is

10  does it address legislative bodies or make proposals as

11  to pending legislation or regulations, regulatory bodies

12  and regulations?

13    A.    I don't know.

14    Q.    Okay.  With regard to the complaint, the

15  complaint mentions in the first numbered paragraph -- I

16  have another copy of it if it would be helpful for you to

17  follow along.

18    A.    Yes, it would.  Thank you.

19              MR. McMENIMEN:  I don't think I

20  need to mark it.  I mean we can agree -- or tell me if we

21  can agree --

22              MR. GUERRERA:  You can just mark

23  it.

24              MR. McMENIMEN:  All right.  Well,

34

1  let's mark it then.  Let's mark it as Exhibit 3.

2

3  (Exhibit No. 3 Amended Complaint and Jury Demand marked)

4

5    Q.    You may take all the time you want to look at

6  that, but if you've looked at it before let me know --

7  let me know when you're ready to answer some questions

8  about it, let me put it that way.

9    A.    You can go ahead and ask.

10    Q.    Okay.  Prior to the filing of this complaint,

11  which is captioned an amended complaint, there had been

12  an earlier complaint filed against an entity called

13  Bakey's, Incorporated, under this docket number, were you

14  aware of that?

15    A.    Prior to this particular case?

16    Q.    Yes.  Prior to Peter A. Spalluto and Access with

17  Success, Incorporated., plaintiffs versus HDP, Inc.,

18  defendant, with this docket number, there had been an

19  initial complaint or first complaint with the party --

20  the defendant being identified as Bakey's, Incorporated.

21  Were you familiar with that?

22    A.    I remember having some discussions about a case

23  but I don't know the -- you know, the procession, the

24  actual chain of events and which was filed and which

35

1  wasn't filed, but I'm familiar and I have had discussions

2  with counsel about this case in the past.

3    Q.    Okay.  In the paragraph numbered one under the

4  heading parties, it is recited that one of the members of

5  Access with Success is a person by the name of Felix

6  Esposito.  Do you know Felix Esposito?

7    A.    No.  Other than the name, no.  I've seen the

8  name.

9    Q.    But you don't -- you've never had any personal

10  contact with him, I take it?

11    A.    No, I haven't.

12    Q.    Do you know if he has any particular official

13  function with Access with Success, Incorporated?

14    A.    No, I don't.

15    Q.    It mentions an individual named Mr. G. David

16  Iverson, I-V-E-R-S-O-N.  And the complaint asserts that

17  he is a member.  Do you known Mr. Iverson?

18    A.    Personally I don't know him.  I've never met

19  him, no.

20    Q.    It next mentions the individual plaintiff in the

21  action, Mr. Peter A. Spalluto, S-P-A-L-L-U-T-O.  Do you

22  know Mr. Spalluto?

23    A.    I don't know him personally, never met him, but

24  I've seen, you know, different postings online, you know,

36

1  discussions, et cetera, and I know him with respect to

2  this case.

3    Q.    Okay.  That is, if I understand you correctly,

4  please tell me if I do understand you correctly, you've

5  seen his name as he is a plaintiff in this action and

6  you're generally familiar with the complaint; am I right?

7    A.    Yes.  I've seen his name on other actions as

8  well.

9    Q.    Okay.  And you mentioned one earlier in the

10  federal court in Boston, an action which you saw an

11  opinion or a ruling by a district court judge?

12    A.    Yes.

13    Q.    But you just said other actions as well?

14    A.    Yes.

15    Q.    So are you aware of any other actions besides

16  this one and that one that Mr. Spalluto is a party to?

17    A.    No, I'm not aware of any, but he may be a party

18  with other Access cases and I may have not seen his name

19  on the complaints so I'm not aware of any.

20    Q.    When you say he may be a party along with -- in

21  some other Access cases and you may not have seen his

22  name, are you talking about other Access cases like the

23  ones we've earlier described, the seven or so?

24    A.    Yes.

Spalluto/Access with Success vs. HDP, Deposition of Dino Theodore, 1/24/2007

Case 1:05-cv-10385-LTT    Document 17-7    Filed 03/22/2007    Page 10 of 17

37

1  Q.  Okay.  Just so that I understand what you're
2  saying, are you aware of any other actions in which Mr.
3  Spalluto is a party, whether or not Access with Success
4  is also a party?
5  A.  No.
6  Q.  Okay.  With regard to the people whom I have
7  just talked with you about, Felix Esposito, Mr. Iverson,
8  and Mr. Spalluto, do you know if there is somebody in
9  Access with Success, Incorporated, who does have personal
10  contact with them?
11  A.  No.
12  Q.  Would Mr. Frotton know, as far as you know?
13  A.  I don't know.
14  Q.  Okay.  The next named person on the second page
15  is Scott M. Frotton, F-R-O-T-T-O-N, who is identified as
16  a founding member of AWS, and I represent to you that
17  stands for Access with Success.  Do you know Mr. Frotton?
18  A.  I've seen his name many times.
19  Q.  Have you ever met him?
20  A.  No, I haven't.
21  Q.  Okay.  Have you communicated with him via e-mail
22  or through websites or any such thing, if you know?
23  A.  I've been -- I've communicated with him through
24  e-mail, with him through e-mails as a second party,

38

1  perhaps as a CC or as a forwarded e-mail or something in
2  that capacity.
3  Q.  I take it from your answer then that you've
4  never had a conversation either electronically or
5  verbally with Mr. Frotton?
6  A.  That's correct.
7  Q.  And the same could be said of the earlier
8  individuals that I've mentioned?
9  A.  That's correct.
10  Q.  The next one that I see is Mr. Francis DeVito.
11  He's four lines down on the second page.
12  A.  Yes, I see it.
13  Q.  Do you know Mr. DeVito?
14  A.  No, I don't.
15  Q.  Have you ever met Mr. DeVito?
16  A.  No, I haven't.
17          MR. GUERRERA:  That's him up
18  there.
19          MR. McMENIMEN:  Thank you for
20  that.
21  Q.  The next person whom I see is a Mr. Raymond J.
22  Aziz.  I hope I'm not mispronouncing his name.  It's
23  A-Z-I-Z.  Do you see that --
24  A.  Yes.

39

1  Q.  -- less than halfway down?
2  A.  Yes.
3  Q.  Do you know Mr. Aziz?
4  A.  Other than having seen him on documents, AWS
5  documents, no.
6  Q.  When you say you've seen him on AWS documents,
7  what kind of documents are you referring to?
8  A.  Just membership paraphernalia, other complaints
9  I think I've seen his name on as a member and as a
10  complaining party.
11  Q.  When you say "a complaining party," do you mean
12  a plaintiff?
13  A.  Yes.
14  Q.  What cases do you recall Mr. Aziz being a
15  plaintiff in?
16  A.  I can't specifically say and I hate to assume
17  but --
18  Q.  I don't want you to assume, but what's your best
19  understanding?
20  A.  My best understanding would be that he would
21  probably be included in the cases that we previously
22  discussed.
23  Q.  Okay.  The next name I see about halfway down
24  the page is Norman P. -- forgive me -- Mr. Crescimano, I

40

1  believe it is, which is C-R-E-S-C-I-M-A-N-O.  Do you see
2  that?
3  A.  Yes, I do.
4  Q.  And did I read it correctly?
5  A.  I don't know if you read it correctly but --
6          MR. GUERRERA:  You did.
7  Q.  Do you know Mr. Crescimano?
8  A.  No, I don't.
9  Q.  Have you had any contact with him either via
10  e-mail or correspondence in some other form?
11  A.  I don't know, perhaps by e-mail.  As I said a
12  lot of the communications are done via the Internet.
13  Q.  Okay.  And, again, that would be if he were on a
14  copy list or you were on a CC list?
15  A.  Sure.
16  Q.  Okay.  The next name, a line down from Mr.
17  Crescimano, is Mr. Frank Salafia.  That's S-A-L-A-F-I-A.
18  Do you know Mr. Salafia?
19  A.  No, I don't.
20  Q.  Do you know -- it says he's a member of Access
21  with Success.  Do you know that he's a member of Access
22  with Success?
23  A.  Yes, I do.
24  Q.  And how do you know that?

**41**

1    A.   I believe I saw a copy of his membership form at
2  one point.
3    Q.   Okay.  Where would that have been?
4    A.   That -- I believe it was -- I obtained it
5  through discussions with counsel.  I've actually seen it.
6    Q.   Okay.  Do you mean Mr. Guerrera?
7    A.   Yes.
8    Q.   Okay.  The next person is Amylee, that's
9  A-M-Y-L-E-E, all one word, O'Beirne, that's O,
10 apostrophe, B-E-I-R-N-E.  Do you know Ms. O'Beirne?
11   A.   No, I don't.
12   Q.   It indicates that she is a founding member of
13 Access with Success.  Is that -- do you have any
14 understanding one way or another of whether that's true?
15   A.   I accept it as true.
16   Q.   Okay.  The next person is the -- I was going to
17 say the ubiquitous but that's not the word -- it's
18 yourself, isn't it --
19   A.   Yes, it is.
20   Q.   -- Dino N. Theodore?
21   A.   Yes.
22   Q.   Next is John Pattavina, P-A-T-T-A-V-I-N-A.  Do
23 you know Mr. Pattavina?
24   A.   No, I don't.

**42**

1    Q.   Ever had any contact with him that you're aware
2  of?
3    A.   Perhaps through e-mail, much the same as the
4  previous discussions that we've had.
5    Q.   Okay.  If you go to the last page of the
6  complaint, you will see that there's an electronic
7  signature block for a wonderful woman and a fine lawyer
8  who I met before by the name of Ann Marie Pattavina.
9    A.   Yes.
10   Q.   Do you know Ann Marie Pattavina?
11   A.   No.
12   Q.   Okay.  Then do you know whether she is related
13 to John Pattavina?
14   A.   No, I don't know.
15   Q.   Okay.  The next name that I see on -- going back
16 to page 2 -- is Peter DiPalma.  And that's capital D-I,
17 capital P-A-L-M-A.  And that's about five lines up from
18 the bottom of page 2.  Do you know Mr. DiPalma?
19   A.   No, I don't.
20   Q.   Ever met him?
21   A.   No.
22   Q.   Okay.  The next name a line down is Robert
23 Brearley.  That's capital B-R-E-A-R-L-E-Y.  Do you know
24 Mr. Brearley?

**43**

1    A.   Other than as a member of AWS, no.
2    Q.   Well, when you say other than as a member of
3  AWS, are you saying that you've seen his name on a
4  membership of some sort?
5    A.   I know that he is a member.  I've seen him on
6  complaints that have been drafted.
7            MR. GUERRERA:  That's him up
8  there.
9    Q.   Are these complaints for pending actions or
10 completed actions different from those that we've already
11 talked about, the seven or eight?
12   A.   No.
13   Q.   I think what you're saying -- tell me if I'm
14 correct, that he was also a party or identified in some
15 of the lawsuits that Access with Success is a plaintiff
16 in?
17   A.   I believe he was, yes.
18   Q.   The next name, third from the bottom line, is
19 Robert L. Smith.  Do you know Mr. Smith -- Robert L.
20 Smith, III, I believe?
21   A.   No, I don't know him personally.
22   Q.   Okay.  With respect to the complaint, paragraph
23 3, the second sentence says that, "Access with Success
24 has also been discriminated against because of its

**44**

1  association with its members and their claims."
2            On behalf of Access with Success,
3  Incorporated, can you tell me how the corporation has
4  been discriminated against because of its association
5  with its members and their claims?
6    A.   Well, I didn't draft the complaint.
7    Q.   I understand that, but I'm asking you as a
8  spokesperson for AWS.
9    A.   How -- could you repeat the question again?
10   Q.   Yes.  Would you tell me how -- can you give me
11 an example of how AWS has been discriminated against
12 because of its association with its members and their
13 claims?
14   A.   Well, the allegations listed in the complaint
15 affect individuals that have certain disabilities and
16 these individuals that are mentioned in this complaint
17 have those disabilities.  So the discrimination that is
18 alleged affects and impacts the individuals listed as
19 complainants in this case.  So that in and of itself is
20 the discrimination.  I don't know if that answers your
21 question.
22   Q.   Is your answer -- are you saying that Access
23 with Success, Incorporated, has been the victim of
24 discrimination because some of its members have been

Spalluto/Access with Success vs. HDP; Deposition of Dino Theodore, 1/24/2007

Case 1:05-cv-10385-EFH    Document 17-7    Filed 03/22/2007    Page 12 of 17

45

1  denied access to places of public accommodation?

2     A.  In different situations, yes.

3     Q.  Okay.  Do you know of any other way other than

4  that derivative -- I'm going to call it derivative and

5  you can quarrel with me if you want but if we understand

6  it -- other than that way do you know of any other way in

7  which Access with Success, Incorporated, has been the

8  victim of discrimination?

9     A.  When you say Access with Success you mean as a

10 corporate entity --

11    Q.  Yes.

12    A.  -- or the individuals that are associated with

13 or are members of Access with Success?

14    Q.  The corporate entity.

15    A.  The corporate entity itself has been

16 discriminated against?

17    Q.  I'm asking you how it has other than through the

18 derivative way, that is by having its members having been

19 denied accessibility to places of public accommodation?

20    A.  I don't know the answer to that --

21            MR. GUERRERA:  It's a

22 representative of its members.

23            MR. McMENIMEN:  Yeah.

24            MR. GUERRERA:  That's the

46

1  essential nature.

2             MR. McMENIMEN:  Well, I understand

3  and I don't want to quarrel.  I'm just trying to ask --

4             MR. GUERRERA:  You're getting into

5  legal questions, but I can quote Southside Fair Housing

6  Commission versus City of New York --

7             MR. McMENIMEN:  Well --

8             MR. GUERRERA:  928 F.2d 1336, "An

9  Association may have standing solely as the

10 representative of its members provided it alleges its

11 members or any one of them are suffering immediate or

12 threatened injury as a result of the challenged action."

13 It's a 1991 case out the second circuit.

14            MR. McMENIMEN:  Well, I appreciate

15 that and I don't wish to argue legal issues with you.

16            MR. GUERRERA:  But those are the

17 kind of questions the witness is getting.

18            MR. McMENIMEN:  I'm trying --

19            MR. GUERRERA:  And he is a lawyer,

20 but you're asking for legal questions.

21            MR. McMENIMEN:  I'm trying to

22 conduct a deposition of Access with Success,

23 Incorporated.

24    Q.  Just so that we're clear going forward, Mr.

47

1  Theodore, I'm not asking you legal opinions.  I'm asking

2  you for any factual basis as a spokesperson for the

3  corporation.  Are you and I clear on that?

4     A.  Yes.

5     Q.  Okay.  I don't want to argue these issues with

6  counsel.  I'm looking for the answers to deposition

7  questions.

8             MR. GUERRERA:  I think they were

9  calling for legal opinions but --

10            MR. McMENIMEN:  You can think what

11 you want.

12            MR. GUERRERA:  I object to the

13 form of the question on that basis.

14            MR. McMENIMEN:  You're entitled to

15 object and you're entitled to put an objection on record,

16 but that's about all you're entitled to do.

17            MR. GUERRERA:  Well, I've done

18 that.

19    Q.  On behalf of Access with Success, Incorporated,

20 as its designated spokesperson, going to paragraph 16 of

21 numbered -- paragraph numbered 16 of the complaint, do

22 you see that?

23    A.  Yes, I do.

24    Q.  Okay.  You have it before you, right?

48

1     A.  Yes.

2     Q.  Paragraph 16 begins with the sentence, "On

3  September 7, 2004, Mr. Spalluto visited Boston and

4  planned to have lunch with friends at Bakey's."  Did I

5  read that correctly?

6     A.  Yes, you did.

7     Q.  Do you know the purpose of Mr. Spalluto's visit

8  to Boston on September 7, 2004?

9     A.  It says he planned to have lunch with his

10 friends at Bakey's.

11    Q.  No.  I'm asking you if you as the spokesperson

12 for Access with Success, Incorporated, have any knowledge

13 of what Mr. Spalluto's business in Boston was on

14 September 7, 2004?

15    A.  Other than planning to have lunch at Bakey's I

16 don't know of any other reason why.

17    Q.  What is the basis for your knowledge that he was

18 planning on having lunch on September 7, 2004, at

19 Bakey's?

20    A.  Well, I'm relying on the No. 16 that you pointed

21 to in the complaint.

22    Q.  The complaint.  You didn't draft this complaint,

23 you said?

24    A.  Oh, no, I didn't.

49

1    Q.  Independent of the fact that that sentence

2  appears in this complaint, do you have any knowledge of

3  the facts that form the basis for the assertion that Mr.

4  Spalluto visited Boston on September 7, 2004, and planned

5  to have lunch with friends at Bakey's?

6    A.  No, I don't.

7    Q.  The next sentence in paragraph 16 says, "He,"

8  meaning Mr. Spalluto, "called ahead to find out whether

9  he could get inside and be served at a table in his

10  electric wheelchair."

11          Do you have any knowledge as the

12  30(b)(6) spokesperson for Access with Success,

13  Incorporated, as to -- let me strike the question and ask

14  it a more proper way.

15          What is the basis of Access with

16  Success, Incorporated's knowledge that Mr. Spalluto

17  called ahead to find out whether he could get inside and

18  be served at a table in his electric wheelchair?

19    A.  What is the basis?  The basis is that Mr.

20  Spalluto indicated that this is what occurred.

21    Q.  To whom did he indicate that?

22    A.  Well, he indicated it to whoever filed this

23  complaint, and he also indicated it to members of Access

24  with Success.

50

1    Q.  Who are the members of Access with Success that

2  he indicated it to?

3    A.  I can't answer that question because I don't

4  know.

5    Q.  As the spokesperson for Access with Success, you

6  don't know who at Access with Success Mr. Spalluto spoke

7  to?

8    A.  Who at Access with Success?  No, I don't.

9    Q.  The next sentence of paragraph 16 says that,

10  "He," referring to Mr. Spalluto, " was told that this

11  would be no problem because there is an accessible side

12  entrance."

13          Now, do you know what the basis

14  for that assertion is as the spokesperson for Access with

15  Success, Incorporated?

16    A.  It's based on what Mr. Spalluto said.

17    Q.  And certainly it's nothing he ever said to you,

18  you'll agree with me.  He never said it to you

19  personally, right?

20    A.  Well, I never had any discussions with Mr.

21  Spalluto.

22    Q.  Okay.  So you would assume that that's something

23  Mr. Spalluto said because it appears in this complaint;

24  is that a fair statement?

51

1    A.  I don't assume it.  I accept it as true given

2  the fact that he attested to it in filing his complaint.

3    Q.  Do you see any attestation anywhere?

4    A.  Well, he filed a complaint and I know he had

5  attorneys sign it so I would hope that he filed it, you

6  know, truthfully.  I mean given any complaint on any day

7  a lawyer relies on the truthfulness of the client in the

8  filing.

9    Q.  No doubt.

10    A.  And as an attorney you would know that.

11    Q.  But you have no personal knowledge and no

12  knowledge as the 30(b)(6) spokesperson of Access with

13  Success, Incorporated, as to those incidents; that is,

14  Mr. Spalluto's visiting Boston, Mr. Spalluto's planning

15  to have lunch at Bakey's, Mr. Spalluto calling ahead to

16  find out if he could get inside, and Mr. Spalluto being

17  told there would be no problem?

18    A.  Right, exactly, I don't have any knowledge as to

19  those circumstances.

20    Q.  If you would go to paragraph No. 24 of the

21  complaint.  The last sentence of paragraph 24 recites,

22  "On information and belief, HDP," that's the defendant,

23  "has made renovations since January 26, 1992, such that

24  including accessibility features was mandatory."

52

1          First of all, did I read that

2  sentence correctly?

3    A.  Yes.

4    Q.  And what is the information that Access with

5  Success, Incorporated, has that HDP has made renovations

6  since January 26, 1992, such that including accessibility

7  features was mandatory?

8    A.  I don't know the information.

9    Q.  All right.  Who at Access with Success,

10  Incorporated, would have that information?

11    A.  I don't know.

12    Q.  Do you know if anybody does have such

13  information?

14    A.  No, I don't.

15    Q.  As the spokesperson for Access with Success,

16  Incorporated, what do you know about the circumstances of

17  Mr. Spalluto's visit to Boston on September 7, 2004?

18    A.  I know that he was not able to access Bakey's on

19  Broad Street in Boston.  I know that it would have been

20  impossible for him to access Bakey's in Boston.

21    Q.  How do you know that?

22    A.  Because I know that Bakey's in Boston does not

23  provide accessibility for a person in his physical

24  condition.

53

1    Q.    And how do you know that Bakey's does not
2  provide accessibility?
3    A.    Well, I've visually seen Bakey's and the way
4  it's set up and there is actually I believe three
5  different sets of stairs, if my recollection is correct,
6  and given the fact that there are steps leading into the
7  building would be impossible for Mr. Spalluto to enter
8  the building.
9    Q.    Now, when did you inspect the outside or the
10  exterior of the building?
11    A.    Well, I was -- I've actually seen the building
12  on many occasions as early as 1993 and up to including
13  recently I think I saw a photograph recently. Prior to
14  that I've been in the neighborhood, many times I've
15  passed the building, and I can attest to the fact that
16  there are stairs leading in and there is no access for a
17  person in Mr. Spalluto's condition.
18    Q.    Okay. Have you ever been inside Bakey's?
19    A.    I wouldn't be able to gain -- get inside of
20  Bakey's.
21    Q.    Your answer is no, you've never been inside
22  Bakey's?
23    A.    No, I've never been permitted to go inside
24  Bakey's.

54

1    Q.    All right. As far as you know has Mr. Spalluto
2  ever been inside Bakey's?
3    A.    I don't know that he has. I don't know that he
4  would be able to get inside Bakey's.
5    Q.    Going to page 8 of the complaint let me just --
6  tell me when you get there.
7    A.    We're there.
8    Q.    At paragraph 33 there is a factual assertion,
9  "The doors in several of the building entrances are
10  fitted with inaccessible hardware at the facility in
11  violation of" a section of the Americans with
12  Disabilities Act Guidelines. Did I paraphrase that in
13  substance correctly?
14    A.    Yes. Yes, you did.
15    Q.    Who at Access with Success, Incorporated, would
16  have made the determination that the doors were fitted
17  with inaccessible hardware on September 7, 2004?
18    A.    Well, Mr. Spalluto would be able to.
19    Q.    Well, do you know that to be the case?
20    A.    Well, from what I've seen, yes, the entrances
21  are fitted with inaccessible hardware.
22    Q.    And that's based on your own visual inspection?
23    A.    My observations.
24    Q.    All right. Paragraph 34 recites, "There are

55

1  rises at the thresholds of the entrances at the facility
2  in excess of three-quarters of an inch" and in violation
3  of Americans with Disabilities Act Guidelines. Did I
4  paraphrase that in substance?
5    A.    Yes, you did.
6    Q.    Who on behalf of Access with Success,
7  Incorporated, measured the thresholds and determined that
8  they were in excess of three-quarters of an inch --
9    A.    I don't know.
10    Q.    -- on September 7?
11    A.    I don't know who measured them.
12    Q.    Who would know, do you know?
13    A.    I don't know who would know. Perhaps whoever
14  the person was that was -- that did the measurement would
15  know, but I don't know.
16    Q.    And you have no knowledge whatsoever as to who
17  the person was that did the measurement; is that correct?
18    A.    I believe there was -- I may have looked at a
19  document. I think there was an inspection done at some
20  point in time. I reviewed a document which indicated
21  there was an inspection done.
22    Q.    Was that inspection conducted prior to the
23  filing -- prior to the drafting of this complaint, if you
24  know?

56

1    A.    I don't think it was. I think it was done in
2  conjunction with or post the filing of the complaint, but
3  I did read -- I do recall reading an actual inspection
4  that was done by either someone hired or directed or
5  instructed by Access with Success or someone hired for
6  the defendant. I'm not sure, either or. My recollection
7  isn't that clear on it.
8    Q.    Well, if such an inspection were done, and I
9  represent to you that it was --
10    A.    Okay.
11    Q.    -- but if it were done after the complaint had
12  been drafted and filed, then that inspection would not be
13  the source of the assertion that the rises in the
14  thresholds at the entrances of the facility were in
15  excess of three-quarters of an inch, do you follow me?
16    A.    I'm following you, yes.
17    Q.    So my question is what knowledge do you have as
18  spokesperson for Access with Success as to who
19  measured -- on September 7, 2004, who measured the
20  thresholds and found them to be in excess of
21  three-quarters of an inch?
22    A.    Where it is that you're seeing September 7 that
23  this measurement was taken?
24    Q.    If you look at paragraph No. 30 at the top of

57

```
1    page 8 --
2      A.   Yes.
3      Q.   -- do you see where it says, "Upon arriving for
4    his visit on September 7, 2004, Mr. Spalluto observed and
5    encountered the architectural barriers to access set
6    forth below." Did I read that correctly?
7      A.   Yes.
8      Q.   Four paragraphs down from that there is an
9    assertion that the rises at the thresholds of the
10   entrances were in excess of three-quarters of an inch; do
11   you see that?
12     A.   Yes.
13     Q.   So my questions is on September 7, 2004, who
14   measured the thresholds to determine that they were in
15   excess of three-quarters of an inch?
16     A.   I don't know.
17     Q.   If you go to paragraph 37 you see the assertion,
18   "The interior doors in several locations of the building
19   require excessive force to open in violation of" the
20   Americans with Disabilities Act Accessibility Guideline.
21   Did I read that accurately?
22     A.   Yes.
23     Q.   Semi-accurately?
24     A.   Well, that's the way it seems to be written to
```

58

```
1    me, yes.
2      Q.   And that -- who measured -- who determined that
3    when Mr. Spalluto got to Bakey's on September 7, 2004,
4    the interior doors required excessive force?
5      A.   I don't know.
6      Q.   Who on behalf of Access with Success,
7    Incorporated, would know?
8      A.   I don't know who would know that. I'm assuming
9    that this is all as a result of, you know, some
10   examination that was done.
11     Q.   Okay. Who did that examination is what I'm
12   trying to get at?
13     A.   I don't know who did it.
14     Q.   Do you know if anybody at Access with Success,
15   Incorporated, knows who did it?
16     A.   I'm sure somebody would know who did it, but I'm
17   not the person.
18     Q.   Well, can you tell me who that person might be?
19     A.   No, I can't.
20     Q.   Okay. Paragraph 38 says that, "The stairs
21   provided at the facility do not comply with the standards
22   prescribed" in a section of the Guidelines, right? And,
23   again, you don't know who conducted those measurements,
24   do you?
```

59

```
1      A.   Well, it doesn't say there were any
2    measurements. It just says they don't comply with the
3    standards prescribed in 4.9 of the ADAAG.
4      Q.   Well, if those were interior stairs --
5      A.   It doesn't say either or though. I mean it
6    could be the stairs just facing the building and I could
7    tell you that those stairs do not comply with the
8    standards prescribed.
9      Q.   If you turn the page and go to paragraph 49 --
10   excuse me, if you turn to page 9 and go to paragraph 41
11   there is an assertion -- do you have it, Mr. Theodore?
12     A.   41, yes.
13     Q.   "There are protruding objects present throughout
14   the facility." Did I read that?
15     A.   Yes.
16     Q.   And you've never been in the facility so you
17   didn't make that observation, did you?
18     A.   No, I'm not able to get into the facility.
19     Q.   And as far as you know based upon the testimony
20   you've given so far today, Mr. Spalluto hasn't been
21   inside the facility either?
22     A.   I don't know that he has or hasn't, but I don't
23   believe that he has.
24     Q.   Since that assertion appears in the complaint,
```

60

```
1    the observation had to have been made prior to the
2    drafting of the complaint; you'll agree with me on that,
3    won't you?
4      A.   I don't understand the question.
5      Q.   Well, since the assertion is -- since the
6    assertion that there are protruding objects present
7    throughout the facility, that facility being Bakey's,
8    since that appears in the complaint, since that factual
9    assertion appears in the complaint, the observation had to be
10   forming the basis for that factual assertion had to be
11   made before the complaint was drafted, you'll agree with
12   me on that, won't you?
13     A.   I can't agree with you either way on that. I
14   don't know that it's been made before the complaint was
15   drafted.
16     Q.   Well, since it appears in the complaint it has
17   to have occurred before the complaint was drafted or it
18   was made up, wouldn't you agree with me?
19     A.   No, I can't agree with you on -- I don't know --
20   I don't understand the question actually. It's a bit
21   confusing.
22     Q.   I'll try not to -- I promise you I'm not trying
23   to confuse you.
24          If you look at the last page of
```

Spalluto/Access with Success vs. HDP: Deposition of Dino Theodore, 1/24/2007

Case 1:05-cv-10386-EFH    Document 17-7    Filed 03/22/2007    Page 16 of 17

61

1 the complaint, it bears the date February 1, 2006; do you
2 see that?
3    A.   Yes.
4    Q.   So we know -- if that date is accurate, the
5 complaint was drafted on or before February 1, 2006,
6 would you agree with me?
7    A.   Yes.
8    Q.   And the complaint, as it was drafted, contains
9 the assertion that there are protruding objects present
10 throughout the facility, am I right?
11    A.   Yes.
12    Q.   Now, if that assertion was based upon
13 observations, they couldn't have been made after the
14 complaint was drafted because if they had been made after
15 they wouldn't have appeared in the complaint, right?
16    A.   Right.
17    Q.   So my question to you is:  Who prior to the
18 drafting of the complaint made those observations on
19 behalf of Access with Success, Incorporated?
20    A.   Well, I don't know.  There's a mentioning of
21 some friends that he had met, perhaps they were the
22 friends.  I don't know who made the observations.
23    Q.   Do you know who the friends were?
24    A.   No.

62

1    Q.   Anybody at Access with Success to your knowledge
2 who might know who the friends were other than Mr.
3 Spalluto?
4    A.   No.
5    Q.   Insofar as there are assertions in this
6 complaint as to conditions in the interior of the
7 premises, insofar as you've never been inside the
8 premises, and insofar as to the best of your knowledge
9 Mr. Spalluto has never been inside the premises, can you
10 tell me who would have made the observations about the
11 interior of the premises that appear in the complaint
12 filed on behalf of Access with Success, Incorporated?
13    A.   No, I can't.
14    Q.   And apart from Mr. Spalluto, do you know of
15 anyone who has personal knowledge of the matters alleged
16 in the complaint?
17    A.   Other than the drafters of the complaint?
18    Q.   Well, if the drafters of the complaint were
19 lawyers, they would have relied upon what their clients
20 told them.
21    A.   Sure.
22    Q.   And you already told me that.
23    A.   Sure, yup.
24    Q.   So I'm talking about the identity of persons who

63

1 had personal knowledge of the matters alleged in the
2 complaint.
3            Apart from Mr. Spalluto, do you
4 know anybody who has personal knowledge of the matters
5 asserted in this complaint?
6    A.   Well, yes.
7    Q.   Who?
8    A.   I have personal knowledge.
9    Q.   And what is your personal knowledge?
10    A.   I have observed Bakey's and I've observed the
11 exterior of the premises and I know that the premises are
12 not accessible to someone in a wheelchair.
13    Q.   Okay.  Who else besides you and Mr. Spalluto,
14 presumably, has personal knowledge of the matters alleged
15 in this complaint?
16    A.   Well, anybody that's listed on the complaint
17 that has read the complaint would have knowledge.
18    Q.   Personal knowledge, Mr. Theodore --
19    A.   Personal knowledge.
20    Q.   -- based upon observation?
21    A.   Based upon actual observations?
22    Q.   Yes, sir.
23    A.   I can't answer the question.  I don't know.
24    Q.   Do you know if somebody on behalf of Access with

64

1 Success, Incorporated, would know?
2    A.   Of others that have personal knowledge --
3    Q.   Right.
4    A.   -- of observations, no.
5            MR. McMENIMEN:  That's all I have,
6 Mr. Theodore.  Thank you very much for your patience.
7            THE WITNESS:  It's been my
8 pleasure.
9            MR. McMENIMEN:  You might not be
10 through.  Do you have any questions?
11            MR. GUERRERA:  No.
12            (Discussion off the record)
13            MR. McMENIMEN:  For the record, I
14 may upon reviewing this transcript be required to seek a
15 further deposition of Access with Success, Incorporated,
16 to find a spokesperson who has knowledge of some of the
17 matters contained in Schedule A that Mr. Theodore does
18 not have any knowledge of.  I just want to put that on
19 this particular transcript.
20            (Whereupon, the deposition was
21            concluded at 11:38 a.m.)
22
23
24

65

```
1                    CERTIFICATE
2
3              I, DINO N. THEODORE, do hereby
4    certify that I have read the foregoing transcript of my
5    testimony, and further certify under the pains and
6    penalties of perjury that said transcript is a true and
7    accurate record of said testimony.
8                    Dated at _____,
9    this _____ day of _____, 20 ___.
10
11
12
13
14

15              _____
                DINO N. THEODORE
16              Signed under the pains
                and penalties of perjury
17
18
19
20
21
22
23
24
```

66

```
1                    CERTIFICATE
2
     Commonwealth of Massachusetts
3    Middlesex, ss.
4
5              I, Kimberly A. McGonagle,
6    Registered Professional Reporter and Notary Public in and
7    for the Commonwealth of Massachusetts, do hereby certify:
8              That DINO N. THEODORE, the witness
9    whose deposition is hereinbefore set forth, was
10   satisfactorily identified and duly sworn by me and that
11   such deposition is a true record of the testimony given
12   by the said witness.
13              IN WITNESS WHEREOF, I have
14   hereunto set my hand and notarial seal this 2nd day of
15   February, 2007.
16
17
18
19              _____
                Kimberly A. McGonagle
20              Registered Professional Reporter
                CSR No. 110393
21
22
     My commission expires
23   on May 3, 2013
24
```

67

```
1                    ERRATA SHEET
2
3    PAGE NUMBER   LINE NUMBER   REASON FOR CORRECTION
4    _____   _____   _____
5    _____   _____   _____
6    _____   _____   _____
7    _____   _____   _____
8    _____   _____   _____
9    _____   _____   _____
10   _____   _____   _____
11   _____   _____   _____
12   _____   _____   _____
13   _____   _____   _____
14   _____   _____   _____
15   _____   _____   _____
16   _____   _____   _____
17   _____   _____   _____
18   _____   _____   _____
19   _____   _____   _____
20   _____   _____   _____
21   _____   _____   _____
22   _____   _____   _____
23   _____   _____   _____
24   DATE: _____   SIGNATURE: _____
```

Civil Name Search Results — D. MASS

19 Total Case matches for selection ACCESS WITH SUCCESS, INC 01/01/2000 to 03/13/200
Mon Mar 19 12:22:53 2007

| Name | Court | Case No. | Filed |
|------|-------|----------|-------|
| ACCESS WITH SUCCESS, INC. | madce | 1:2004cv10249 | 02/05/2004 |
| Spalluto v. KSA Realty Trust | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2005cv10314 | 02/16/2005 |
| Theodore v. Demoulas Supermarkets, Inc. | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2005cv10349 | 02/22/2005 |
| Esposito v. Best Western International Inc. | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2003cv10351 | 02/24/2003 |
| Access With Success,, et al v. Vlahakis, et al | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2005cv10384 | 02/28/2005 |
| Esposito v. Prime Hospitality Corp. | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2005cv10385 | 02/28/2005 |
| Spalluto v. Bakey's Incorporated | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2005cv10411 | 03/04/2005 |
| Brearley v. City of Methuen, Massachusetts | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2006cv10982 | 06/05/2006 |
| Smith v. R.J. Fitz Limited Partnership | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2006cv11195 | 07/11/2006 |
| Smith v. Pier View Restaurant, Inc. | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2006cv11205 | 07/13/2006 |
| Smith v. Harbor Watch Inn, Ltd. | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2006cv11268 | 07/24/2006 |
| Smith v. Haskell | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2006cv11286 | 07/26/2006 |
| Theodore v. Wyndham Hotels and Resorts, L.L.C. | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2006cv11647 | 09/13/2006 |
| Smith v. The Druker Company, Ltd. | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2004cv11654 | 07/26/2004 |
| Iverson v. Omni Boston Corporation | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2003cv11668 | 09/08/2003 |
| Access With Success, Inc. v. City of Lawrence | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2003cv11729 | 09/09/2003 |
| Frotton v. Town of Dracut, Massachusetts | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2004cv11825 | 08/20/2004 |
| Iverson v. City of Boston, Massachusetts | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2006cv12010 | 11/02/2006 |
| Esposito v. RLJ Medford Hotel, L.L.C. | | | |
| ACCESS WITH SUCCESS, INC. | madce | 1:2006cv12221 | 12/12/2006 |
| Smith v. Access With Success, Inc. | | | |

# Select A Case — D. N.H.

**This person is a party in 10 cases.**

| | | | |
|---|---|---|---|
| 1:02-cv-00232-JD | Access with Success, et al v. Haig Realty Trust | filed 05/20/02 | closed 04/07/03 |
| 1:02-cv-00233-SM | Access with Success, et al v. Gallagher, et al | filed 05/20/02 | closed 03/24/03 |
| 1:02-cv-00308-SM | Access with Success, et al v. Yankee Greyhound | filed 06/28/02 | closed 05/09/03 |
| 1:02-cv-00309-PB | Access with Success, et al v. Demoulas Supermarket, et al | filed 06/28/02 | closed 04/05/04 |
| 1:02-cv-00358-JD | Access with Success, et al v. Ashworth Hotel, Inc. | filed 08/05/02 | closed 07/30/03 |
| 1:03-cv-00120-JD | Access with Success, et al v. Bob's Stores Center | filed 03/24/03 | closed 11/24/03 |
| 1:04-cv-00054-SM | Aziz et al v. Rockingham Ventures, Inc. | filed 02/12/04 | closed 12/15/04 |
| 1:05-cv-00216-JD | Access with Success, Inc. et al v. The Kieley Corporation, Inc. | filed 06/13/05 | closed 10/19/06 |
| 1:06-cv-00259-JD | Theodore et al v. Salem H Group, L.L.C. | filed 07/14/06 | closed 12/06/06 |
| 1:06-cv-00470-SM | Theodore et al v. Hampton Beach Casino, Inc. | filed 12/18/06 | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/19/2007 15:31:09 | | | |
| PACER Login: | ap0009 | Client Code: | 400806-002-046 |

| Description: | Search | Search Criteria: | Last Name: Access With Success, Inc Type: pty |
|---|---|---|---|
| Billable Pages: | 2 | Cost: | 0.16 |