## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PETER A. SPALLUTO                          )
and ACCESS WITH SUCCESS, INC.,             )
                Plaintiffs     )
                              )  CIVIL ACTION NO.: 05-cv-10385EFH
                              )
         v.                         )
                              )
HDP, INC.,                                 )
                Defendant      )
                              )

### PLAINTIFFS' MEMORANDUM IN SUPPORT
### OF THEIR MOTION TO PRECLUDE DEFENDANT
### FROM OFFERING EXPERT TESTIMONY AT TRIAL

This matter is scheduled for trial on April 9, 2007. There are pending motions. The defendant has moved to dismiss the case on grounds that the plaintiffs failed to attend their depositions. The plaintiffs have opposed the motion and have moved for a continuance of the trial on grounds that the plaintiff, Peter Spalluto, is convalescing from a serious illness; his doctor recommends strongly against traveling from his home in Florida to Boston for a trial on April 9.

The plaintiffs now respectfully move for an order precluding the defendant from offering expert testimony (in the event that the Court denies the pending motions and convenes the case for trial on April 9, 2007). As grounds for their motion, the plaintiffs state that they served their expert disclosure on the defendant on January 29, 2007 (Exhibit A) as per Rule 26(a)(2) of the Federal Rules of Civil Procedure. The defendant, however, has not made its expert disclosure and the plaintiffs have been unfairly prejudiced thereby.

Rule 26(a)(2) states:

"(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

"(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

"(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

On June 22, 2006, in response to document requests, the defendant produced a report of J.F. Cooney & Associates. The report was dated April 18, 2005. The plaintiff anticipates that the defendant will call "Joseph Cooney, Topsfield, MA" to testify as an expert witness at trial. Mr. Cooney is listed as a witness in the Defendant's Pretrial Memorandum.

The defendant should not be permitted to call Mr. Cooney to testify as an expert witness at trial, notwithstanding the production of his report, because there has been no disclosure of:

"[t]he qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the

study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." *Rule 26(a)(2)(b)*.

If offered solely in rebuttal of a party's expert evidence, the expert disclosure must be made within 30 days of the disclosure made by the other party. *Rule 26(a)(2)(c)*. Assuming that the defense expert's testimony would be offered strictly in rebuttal, the defendant should have made its disclosure no later than March 1, 2007. The plaintiffs have been prejudiced by the defendant's failure to disclose the information required by Rule 26(a)(2). The defendant should not be permitted to call Mr. Cooney to testify as an expert witness at trial on April 9, 2007.

> Respectfully submitted, The Plaintiffs, Peter A. Spalluto and Access With Success, Inc.
>
> By their Attorneys,
>
> /s/Nicholas S. Guerrera
> Nicholas S. Guerrera, BBO#551475
> Shaheen, Guerrera & O'Leary, LLC
> Jefferson Office Park
> 820A Turnpike Street
> North Andover, MA 01845
> (978) 689-0800

## CERTIFICATE OF SERVICE

I, Nicholas S. Guerrera, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent, via First-Class Mail, to those indicated as non-registered participants, on this 4th day of April 2007.

Dated: April 4, 2007

/s/Nicholas S. Guerrera
Nicholas S. Guerrera

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER A. SPALLUTO                          )
and ACCESS WITH SUCCESS, INC.,             )
                        Plaintiffs         )   CIVIL ACTION NO.: 05-cv-10385EFH
                                           )
                v.                         )
                                           )
HDP, INC.,                                 )
                        Defendant          )
                                           )

### PLAINTIFFS' DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FED. R. CIV. P. 26 (a)(2)

1.    The following witness may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence:

      Pablo Baez
      Herb J. Neff & Associates
      2500 N. Federal Highway, #223
      Boca Raton, FL  33431

2.    Mr. Baez' report dated September 1, 2006 is attached.

3.    Mr. Baez' curriculum vitae is attached.

4.    The compensation to be paid to Mr. Baez for the attached study and report is $4,025.00.

5.    Mr. Baez testified as an expert at trial in the case of Access4All, Inc. v. Absecon Hospitality Corporation, Civil Action No. 04-6060 (D. NJ).

                              Respectfully submitted,
                              The Plaintiffs,

                              ACCESS WITH SUCCESS, INC. and
                              PETER A. SPALLUTO,

                              By their Attorneys,

_Nicholas S. Guerrera_

Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800

Dated: January 29, 2007

## CERTIFICATE OF SERVICE

I, Nicholas S. Guerrera, do hereby certify that on this date I have served the within motion by causing a copy to be served by electronic mail or by first class mail, postage prepaid, to Brian McMenimen, Esq., Adler, Pollock & Sheehan, PC, 175 Federal Street, Boston, MA  02110.

_Nicholas S. Guerrera_

Dated: January 29, 2007                           Nicholas S. Guerrera

## Herbert J. Neff & Associates

2500 N. Federal Highway, #223
Boca Raton, FL 33431
VOICE: (561) 212-3492    FAX: (561) 338-2903
CGC#: 051895

September 1, 2006

Nicholas Guerrera
Shaheen, Guerrera, & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA  01845

Re:    Bakey's Restaurant & Bar
       45 Broad Street
       Boston, MA 02109

Dear Mr. Guerrera,

On Tuesday, June 16, 2006, an ADA (Americans with Disabilities Act) compliance inspection was conducted at Bakey's Restaurant & Bar in Boston, MA. Plaintiff's expert, Pablo Baez, and Plaintiff's attorney, Nicholas Guerrera, met with representatives for the property. This report was prepared following a rule 34 inspection in a report dated April 18, 2005, the expert for the defense Joseph Cooney wrote that he had reviewed the Plaintiff's complaint. He further stated that an accessible ramp could not be constructed at a number of entrances. We suggest in this report that there is a location which could provide wheelchair access. He also stated that the restaurant had been inspected "on several occasions and has never been cited for (ADA) violations". The "ADA Title III Technical Assistance Manual" states in section III-9.2000 **Relationship to State and local enforcement efforts:**

*"There are tens of thousands of code jurisdictions in the United States that enforce some combination of State and local building codes. Some, but not all, of these include accessibility requirements. Although many are based on a model code, there are major variations among the State codes, and among local codes within some States. Design and construction to these codes will not constitute compliance with the ADA, unless the codes impose requirements equal to or greater than those of the ADA........State or local officials have no authority to waive ADA requirements."*

### Applicable ADAAG Standard

Bakey's Restaurant & Bar in Boston, MA. is an existing facility as defined in the Department of Justice ADA Title III Regulation 28 CFR Part 36 Sec. 36.401. This facility is covered by the Department of Justice ADA Title III Regulation 28 CFR Part 36 Section 36.304 governing the removal of architectural barriers in existing

facilities. Being an existing facility does not exempt the facility from "readily achievable" barrier removal requirements under the ADAAG (Americans with Disabilities Act Accessibility Guidelines).

Barrier Removal in Existing Facilities.

Public accommodations covered by Title III of the ADA must remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable. The ADA generally defines readily achievable as "easily accomplishable and able to be carried out without much difficulty or expense." The requirement to remove architectural barriers where readily achievable is discussed in 28 CFR 36.304. Paragraph (d)(2) states *"Measures taken to comply with readily achievable barrier removal must comply with ADAAG unless it would not be readily achievable. Then, other readily achievable measures that do not fully comply with ADAAG may be taken."*

"Readily achievable barrier removal" is essentially a financial resources matter. Factors include:

A.   The nature and cost of the action needed under this Act;
B.   The overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
C.   the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
D.   the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

**28 C.F.R. § 36.304 - Removal of barriers**

(a) General - A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

(b) Examples - Examples of steps to remove barriers include, but are not limited to, the following actions—

    (1) Installing ramps;
    (2) Making curb cuts in sidewalks and entrances;
    (3) Repositioning shelves;
    (4) Rearranging tables, chairs, vending machines, display racks, and other furniture;
    (5) Repositioning telephones;
    (6) Adding raised markings on elevator control buttons;
    (7) Installing flashing alarm lights;
    (8) Widening doors;
    (9) Installing offset hinges to widen doorways;
    (10) Eliminating a turnstile or providing an alternative accessible path;
    (11) Installing accessible door hardware;
    (12) Installing grab bars in toilet stalls;
    (13) Rearranging toilet partitions to increase maneuvering space;
    (14) Insulating lavatory pipes under sinks to prevent burns;
    (15) Installing a raised toilet seat;
    (16) Installing a full-length bathroom mirror;

(17) Repositioning the paper towel dispenser in a bathroom;
(18) Creating designated accessible parking spaces;
(19) Installing an accessible paper cup dispenser at an existing inaccessible water fountain;
(20) Removing high pile, low density carpeting; or
(21) Installing vehicle hand controls.

(c) Priorities - A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities.

(1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces.

(2) Second, a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables, providing Brailled and raised character signage, widening doors, providing visual alarms, and installing ramps.

(3) Third, a public accommodation should take measures to provide access to restroom facilities. These measures include, for example, removal of obstructing furniture or vending machines, widening of doors, installation of ramps, providing accessible signage, widening of toilet stalls, and installation of grab bars.

(4) Fourth, a public accommodation should take any other measures necessary to provide access to the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation.

(d) Relationship to alterations requirements of subpart D of this part

(1) Except as provided in paragraph (d)(2) of this section, measures taken to comply with the barrier removal requirements of this section shall comply with the applicable requirements for alterations in § 36.402 and §§ 36.404-36.406 of this part for the element being altered. The path of travel requirements of this section shall not apply to measures taken solely to comply with the barrier removal requirements of this section.

(2) *If, as a result of compliance with the alterations requirements specified in paragraph (d)(1) of this section, the measures required to remove a barrier would not be readily achievable, a public accommodation may take other readily achievable measures to remove the barrier that do not fully comply with the specified requirements. Such measures include, for example, providing a ramp with a steeper slope or widening a doorway to a narrower width than that mandated by the alterations requirements. No measure shall be taken, however, that poses a significant risk to the health or safety of individuals with disabilities or others.*

(e) Portable ramps - Portable ramps should be used to comply with this section only when installation of a permanent ramp is not readily achievable. In order to avoid any significant risk to the health or safety of individuals with disabilities or others in using portable ramps, due consideration shall be given to safety features such as nonslip surfaces, railings, anchoring, and strength of materials.

(f) Selling or serving space - The rearrangement of temporary or movable structures, such as furniture, equipment, and display racks is not readily achievable to the extent that it results in a significant loss of selling or serving space.

Two tax incentives are available to businesses to help cover the cost of making access improvements. The first is a tax credit which can be used for architectural adaptations, equipment acquisitions, and services such as sign language interpreters. The second is a tax deduction which can be used for architectural or transportation adaptations. Consult with your tax advisor.

## Tax Credit

The tax credit, established under Section 44 of the Internal Revenue Code, was created in 1990 specifically to help small businesses cover ADA-related eligible access expenditures. A business that for the previous tax year had either revenues of $1,000,000 or less or 30 or fewer full-time workers may take advantage of this credit. The credit can be used to cover a variety of expenditures, including:

- provision of readers for customers or employees with visual disabilities
- provision of sign language interpreters
- purchase of adaptive equipment
- production of accessible formats of printed materials (i.e., Braille, large print, audio tape, computer diskette)
- removal of architectural barriers in facilities or vehicles (alterations must comply with applicable accessibility standards)
- fees for consulting services (under certain circumstances)

Note that the credit cannot be used for the costs of new construction. It can be used only for adaptations to existing facilities that are required to comply with the ADA. The amount of the tax credit is equal to 50% of the eligible access expenditures in a year, up to a maximum expenditure of $10,250. There is no credit for the first $250 of expenditures. The maximum tax credit, therefore, is $5,000.

## Tax Deduction

The tax deduction, established under Section 190 of the Internal Revenue Code, is now a maximum of $15,000 per year a reduction from the $35,000 that was available through December 31, 1990. A business (including active ownership of an apartment building) of any size may use this deduction for the removal of architectural or transportation barriers. The renovations under Section 190 must comply with applicable accessibility standards. Small businesses can use these incentives in combination if the expenditures incurred qualify under both Section 44 and Section 190. For example, a small business that spends $20,000 for access adaptations may take a tax credit of $5000 (based on $10,250 of expenditures), and a deduction of $15,000. The deduction is equal to the difference between the total expenditures and the amount of the credit claimed.

**Example:** A small business' use of both tax credit and tax deduction

$20,000 cost of access improvements (rest room, ramp, 3 doors widened)
- $5,000 maximum credit
$15,000 remaining for deduction

(NOTE: A tax credit is subtracted from your tax liability after you calculate your taxes, while a tax deduction is subtracted from your total income before taxes, to establish your taxable income.)

## Parking

We were informed by representatives of the restaurant that the parking lot located to the left of the building is not part of the property.

## Exterior Accessible Routes

| ADA Standard | Violation and _Solution_ | Picture |
|---|---|---|
| 4.1.2(1) 4.3.2(1) | There is no accessible route within the boundary of the site linking an accessible building entrance with public transportation stops, passenger loading zones, public streets, or sidewalks. _While not readily achievable to provide a lift at the locations depicted by the 1st two pictures at the top it is readily achievable to provide a modular ramp with a platform at the location depicted on the last picture to the bottom right. This location is at the far end on Water Street leading into a dining area. The ramp would have a level platform in front of the door with a six foot section leading down on both ends. The rise is slightly higher than 6 inches. Signage needs to be placed at inaccessible entrances showing the direction to an accessible entrance._ |  |

## Stairs

| ADA Standard | Violation and _Solution_ | Picture |
|---|---|---|
| 4.1.3(4)<br>4.9.1 | There are interior and exterior stairs, connecting levels that are not connected by an elevator, ramp, or other accessible means of vertical access, which do not comply with ADA standard 4.9.<br><br>_Provide & install continuous handrails along both sides of sets of stairs which comply with sections 4.9 & 4.26 of the ADA standards._ |  |
| 4.9.4<br>4.26 | The stairways do not have continuous handrails along both sides.<br><br>_See above._ | |
| 4.9.4(5) | The tops of handrails are not between 34 and 38 inches above the stair nosings.<br><br>_See above._ | |
| 4.9.4(6) | The ends of handrails are not rounded or returned smoothly to the floor, wall or post.<br><br>_See above._ | |

## Entrance and Exit Locations

| ADA Standard | Violation and _Solution_ | Picture |
|---|---|---|
| 4.1.3(8)(a) | A. Less than 50% of all public entrances are accessible.<br>B. Not one accessible entrance is located on the ground floor.<br>C. The number of accessible entrances is not at least equivalent to the number of exits required by the applicable building/fire codes.<br><br>See _"Exterior Accessible Routes" section._ | |
| 4.1.2(7)<br>4.30.1 | A. There are inaccessible entrances without directional signs indicating the location of the nearest accessible entrance.<br>B. The directional signs do not comply with ADA standards 4.30.2, 4.30.3, and 4.30.5.<br><br>See _"Exterior Accessible Routes" section._ | |
| 4.14.1<br>4.3.8 | A. There is a vertical level change between 1/4 inch and 1/2 inch at or along the route to the entrances. The edges are not beveled with a slope of 1:2 or less.<br>B. There is a vertical level change greater than 1/2 inch at the entrances. There is no curb ramp, ramp, or elevator complying with 4.7, 4.8, or 4.10 provided.<br><br>See _"Exterior Accessible Routes" section._ | |
| 4.1.3(16)<br>4.30.1 | Signs which designate exit doors do not comply with ADA standards 4.30.4 (raised and brailled characters and pictorial symbol signs (pictograms), 4.30.5 (finish and contrast), and 4.30.6 (mounting location and height).<br><br>_Install exit door signage complying with ADA standards 4.30.4, 4.30.5, & 4.30.6._ | |

**Doors**

| ADA Standard | Violation and *Solution* | Picture |
|---|---|---|
| 4.1.3(7) 4.13.1 | A. There are spaces in the facility without at least one accessible door (exits, accessible restroom) complying with 4.13.<br><br>*At least one accessible door must be located at each room and space in a facility.* |  |
| 4.13.9 | A. All handles, locks, and latches or other operative devices are not operable with one hand.<br>B. The handles are not operable without tight grasping, pinching, or twisting of the wrist. (U-shaped handles, levers, and push type mechanisms are acceptable designs.)<br><br>*Hardware used to operate doors, including handles, pulls, latches and locks, must have a shape that is "easy to grasp with one hand" and does not require tight grasping or pinching, or twisting of the wrist to operate (i.e., no round knobs). Various types of hardware are acceptable although those that can be operated with a closed fist (levers, push bars) or a loose grip (pull handles) accommodate the broadest range of users. Thumb turns, which are operated with simultaneous hand and finger movement, require a high degree of dexterity and coordination and are not recommended. When sliding doors are fully open, the hardware must be exposed and usable from both sides.* | |

# Interior Accessible Routes

| ADA Standard | Violation and _Solution_ | Picture |
|---|---|---|
| 4.1.3(1) 4.3.2(3) | There is no accessible route connecting all accessible elements and spaces within the building (lower seating area to public restrooms and bar area. _While it may not be readily achievable to provide wheelchair access to this level it does not preclude conducting barrier removal within the restroom area (see "Public Restrooms" section)_ |  |
| 4.3.8 4.5.2 | Ramps or elevators are not used for changes in level greater than 1/2 inch. _See above_ | |
| 4.5.3 | A. Carpet is used on the floor. It is not securely attached. B. There are exposed edges of carpet which are not fastened to the floor and do not have trim along their entire length. _Remove or replace carpeting with low-pile carpeting that is properly secured. A pile thickness up to ½ inch (measured to the backing, cushion, or pad) is allowed, although a lower pile provides easier wheelchair maneuvering. If a backing, cushion, or pad is used, it must be firm. Preferably, carpet pad should not be used because the soft padding increases roll resistance. In high traffic areas, where this attachment may loosen or where a thick soft (plush) cushion or pad is used, wheelchair travel can become very difficult. Secure attachment to the floor is important to prevent buckling or warping. Trim is required along the full length of any exposed edges. This helps keep carpet from curling which can pose a tripping hazard and make wheelchair traffic difficult. The trim must meet requirements for changes in level._ |  |
| 4.1.3(16) 4.30.1 | There are signs which identify permanent rooms and spaces which do not comply with ADA standards 4.30.4, 4.30.5, and 4.30.6. _See "Signage" section._ |  |

## Public Restrooms

| ADA Standard | Violation and _Solution_ | Picture |
|---|---|---|
| 4.1.2(6) 4.1.3(11) 4.22.1 | There are toilet rooms provided which do not comply with ADA standard 4.22. _See below._ | |
| 4.22.1 | The toilet rooms are not located on an accessible route. There is a change of level greater than ½ inch at the door to the designated accessible restroom. _Vertical changes in level up to ¼ inch are permitted without treatment along accessible routes. Changes in level ¼ to ½ inch must be beveled with a slope no greater than 1:2._ | |
| 4.22.2; 4.23.3 | The doors do not comply with ADA standard 4.13. _Hardware used to operate doors, including handles, pulls, latches and locks, must have a shape that is "easy to grasp with one hand" and does not require tight grasping or pinching, or twisting of the wrist to operate (i.e. no round knobs). Various types of hardware are acceptable although those that can be operated with a closed fist (levers, push bars) or a loose grip (pull handles) accommodate the broadest range of users. Thumb turns, which are operated with simultaneous hand and finger movement, require a high degree of dexterity and coordination and are not recommended._ | |
| 4.1.3(16) 4.30.1 | The designated accessible restroom sign does not comply with ADA standards 4.30.4, 4.30.5, 4.30.6, and 4.30.7. _See "Signage" section._ | |



| ADA Standard | Violation and _Solution_ | Picture |
|---|---|---|
| 4.16.4 | There is no back grab bar, at the toilet, at least 36 inches long, horizontally mounted between 33 and 36 inches above the floor, with the end closer to the side wall mounted at least 12 inches from the centerline of the toilet.<br><br>**Figure 29**<br>**Grab Bars at Water Closets**<br><br>Fig. 29(a) Back Wall. A 36 inch (915 mm) minimum length grab bar is required behind the water closet mounted at a height between 33 and 36 inches. The grab bar must extend a minimum of 12 inches (305) beyond the center of the water closet toward the side wall and a minimum of 24 inches (610 mm) toward the open side for either a left or right side approach.<br><br>_Provide & install a rear grab bar & replace the toilet tank with one which has the flush control on the wide (open) side of the toilet._ | |
| 4.16.5, 4.27.4 | The flush controls are not mounted on the wide side of the toilet where the clear floor space is provided.<br><br>_See above._ | |
| | The lavatory does comply with ADA standard 4.19. | |
| 4.22.6, 4.23.6 | **Figure 31**<br>**Lavatory Clearances**<br><br>The following knee and toe clearances are required underneath a lavatory: 8 inches minimum measured from the front edge underneath the lavatory back towards the wall, and a toe clearance 9 inches minimum high, measured a maximum 6 inches from the wall. A minimum 27 inches clear space is required underneath the lavatory bowl. (4.19.2, 4.19.6)<br><br>_Provide & install a lavatory with the top counter no higher than 34 inches._<br><br>_Pipes and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. Exposed sharp or abrasive edges are prohibited. Foam or fiber insulation with protective overwrap on drain, hot water supply, and sharp edges or commercially available rigid pipe covers will satisfy this requirement._<br><br>_The mounting height, of the bottom, of mirrors at accessible lavatories (40 inches maximum above the floor) is based on the standard eye level range of adults seated in wheelchairs (43 to 51 inches)_ | |

11

| ADA Standard | Violation and *Solution* | Picture |
|---|---|---|
| 4.19.2 | The lavatory rim or counter surface is higher than 34 inches above the finish floor. <br><br> *See above.* | |
| 4.19.4 | Pipes and drain pipes are not insulated or otherwise configured to protect against contact. <br><br> *See above.* | |
| 4.22.6 <br> 4.23.6 <br> 4.19.6 | The mirror has the bottom edge of the reflecting surface higher than 40 inches from the floor. <br><br> *See above.* | |

# Signage

| ADA Standard | Violation and Solution | Picture |
|---|---|---|
| 4.1.2(7)<br>4.1.3(16)<br>4.30.1<br><br>Example of Compliant Accessible Unisex Restroom Sign | The designated accessible restroom sign does not comply with ADA standards 4.30.4, 4.30.5, 4.30.6, and 4.30.7.<br><br>*Raised and Braille characters are required on signs that "designate permanent rooms and spaces." This is intended to cover signs typically placed at doorways (i.e., room and exit labels) because doorways provide a tactile cue in locating signs. Where pictograms are used to label "permanent" rooms and spaces (e.g., restrooms), the verbal equivalent must be provided in raised and Braille characters.*<br><br>*All signs covered by 4.30 must have a non-glare finish, such as matte or eggshell. Recommendations: An eggshell finish is recommended.*<br><br>*Placement of tactile signs aside doors (latch-side) provides safety since locating signs on doors that swing out is hazardous. It also provides uniformity which makes signs easier to find by people with little or no vision. (This is why tactile signs are not permitted on doors that swing-in). The 60 inch centerline height also provides uniformity as well as convenience in reading signs from a standing position.*<br><br>*Space must be available for a close approach outside the swing of doors. It is important that fixed elements (e.g., drinking fountains) and furnishings not obstruct the approach. The wheelchair maneuvering clearance required on the pull side of doors should allow adequate space.*<br><br>*Where adequate wall space is not available on the latch-side, signs are to be placed on the nearest adjacent wall surface. At double doors or entries with no doors, signs can be placed on either side although attention should be paid to predominant traffic patterns and building-wide uniformity. At double doors, doors that easily swing back 180 degrees can be a hazard unless doors are equipped with closers or the sign is placed beyond the full swing. Where other codes or standards specify a different location (e.g., illuminated exit signs overhead) redundancy is required.* |  |

## Restaurants

| ADA Standard | Technical Requirements | Comments |
| --- | --- | --- |
| 5.1 4.1.3(18) | At least 5% (but not less than 1) of all fixed tables distributed throughout dining areas. The required clear width (36 inches minimum) is specified for the clearance between the edges of fixed tables or between table edges and walls. Consider providing additional clearance so that routes remain accessible at occupied tables. Space should also be available so that people using wheelchairs do not obstruct required exit and circulation routes. This also allows additional space for wheelchair maneuvering to and from tables. | |
| 4.32.3 | Knee space is not at least 27 inches high, 30 inches wide, and 19 inches deep. (See Figure 45) See above.  Fig. 45 Minimum Clearances for Seating and Tables | |

This Report was prepared by Pablo Baez

5803 Woodruff Drive
Coconut Creek, FL 33073
pwb1966@gmail.com

Phone 954-340-9742
Cellular 954-260-4588
Fax 954-781-1282

## Pablo Baez

| | |
|---|---|
| **Summary of qualifications** | Accessibility Inspector / Plans Examiner<br>ICC Certificate Number 5254782-21<br>Certified Expert US District Court - New Jersey |

| | | |
|---|---|---|
| **Professional experience** | 1985 -1987 | New York Life Insurance Co., New York, NY<br>Data Distribution Clerk |
| | 1987 -1989 | New York Life Insurance Co., New York, NY<br>Computer Operator |
| | 1989-1994 | Xerox Corp., Miami, FL<br>Customer Support Representative |
| | 1994-1997 | Xerox Corp., Miami, FL<br>Account Support Representative |
| | 1997-2004 | Legal Guardian / Caregiver of Mario Baez an incapicated person suffering from Cerebral Palsy. Provided therapy, homecare, transportation and handled day-to-day matters. |
| | 12/2004-02/2005 | Access-Ability Inc., Pompano Beach, FL<br>ADA accessibility apprenticeship |
| | 02/2005 | ICC Accessibility Inspector / Plans Examiner Certification |
| | 02/2005 - | Access-Ability Inc., Pompano Beach, FL<br>Accessibility Inspector / Plans Examiner, ADA Consultant |
| | 2005 - | Herbert J. Neff & Associates<br>Accessibility Inspector / Plans Examiner, ADA consultant |
| | 08/2005 | ADA Working Group's 2005 Biennial ADA Conference<br>Orlando, FL<br>ADAAG and Florida Accessibility Code CEU's |
| | 09/2006- | Americans With Disabilities Act Consultants, LLC<br>Accessibility Inspector / Plans Examiner, ADA consultant |

**Representative Properties Inspected**

Amsterdam Court Hotel, New York, NY

Ameritania Hotel, New York, NY

The Atlantic Hotel, Ft. Lauderdale, FL

Radisson Hotel, Chicago, IL

Quality Inn, Atlantic City, NJ

Hampton Inn, Absecon, NJ

Sherry-Netherland, New York, NY

Courtyard by Marriott, Woburn, MA

Best Western East End, Riverhead, NY

Hotel Sofitel, Houston, TX

Holiday Inn, Springfield, MA

Hilton Medical Plaza., Houston, TX

Wyndham Greenspoint, Houston, TX

Renaissance Hotel, Oak Brook, IL

Sheraton Boston, Boston, MA

Hilton Chicago O'Hare Airport

**Languages**

English, Spanish